SMITH, Administrator, Appellant, v. PERRY et al.,
Executors.

Division Two, June 19, 1906.

1. **ACCOUNTING: Sale of Trust Lands: Consideration Recited in Deed.** The consideration recited in the deed of lands sold by a trustee, held   for himself and another, is prima-facie the amount with which the trustee should be charged in an adjustment of the trust account between them; and in the absence of evidence that a less sum was received, or that a part of it went to pay expenses, he should be charged with that sum. And a letter addressed by the trustee sometime after the sale to the other beneficiary, in which he stated he had received a less sum, but does not explain what was done with the balance, is not sufficient to reduce the amount stated in the deed as the consideration.

2. ———: **Setoff: Counter claim: Mutality: Insolvency: Trustee.** Independent personal debts due from a beneficiary to the trustee, being not statutory counter-claims for want of mutality and therefore not to be setoff against the beneficiary's demands for an accounting of the trust estate as legal demands, may nevertheless be setoff in a proceeding in equity, where the beneficiary is insolvent, and the trustee puts himself in position to invoke the equitable powers of the court.

3. ———: ———: ———: ———: ———: **When Equity Will Setoff Demands.** Cross demands and counter-claims, whether arising out of the same or wholly disconnected transactions, and whether liquidated or unliquidated, and whether the suit for an accounting is between the trustee and the beneficiary or between their administrators, may be enforced by way of setoff whenever the circumstances are such as to warrant the interference of equity to prevent wrong or injustice.

4. ———: **Trustee: Setoff: Equity: Insolvency: Trustee's Failure to Account.** The general rule is that the trustee when called upon to account for the property entrusted to him cannot setoff an independent debt due him from the *cestui que trust*. And where he fails to render an accounting of his trust he will not be permitted to do so. The insolvency of the *cestui que trust* is not sufficient in such case to invoke the interference of a court of equity. It is the imperative duty of the trustee to make an accounting of the property entrusted to him before he can avail himself of the doctrine of equitable setoff.

Smith, Admr., v. Perry.

5. ——: ——: ——: ——: ——: ——: How Shown: Book Account. The law does not require a book to be kept by a trustee in which he enters credit to the *cestui que trust* of his share of the tracts of land held by him for them both. And the fact that the trustee after the sale of a tract of land wrote to the *cestui que trust* that he had done so, but named the price received to be less than that mentioned in the deed as the consideration, and stated that one half the amount was placed to his credit, and those facts were set up in his answer, but at the trial after his death that book was not offered by his administrator, does not show that he has failed to render an account, since the letter revealed as much to the *cestui que trust* as the book entry would have done.

6. ——: ——: ——: ——: ——: ——: Other Items. Nor does the fact that the referee finds that the trustee "seems to be indebted on the trust beyond the items reached in the account" authorize a court of equity to refuse to permit the independent personal debts of the *cestui que trust* to be set-off against his demands against the trustee. Such a finding ought not to preclude equitable setoff, but another reference should be ordered to ascertain what other property belonged to the trust estate.

Appeal from St. Louis City Circuit Court.—*Hon. John A. Talty,* Judge.

REVERSED AND REMANDED.

*B. D. Kribben, H. K. West* and *C. B. Crawley* for appellant.

(1) It is the duty of every trustee, bailee, agent, attorney, factor, or other fiduciary, receiving funds belonging to another, to keep account of his receipts and disbursements, and render true statements to his principal from time to time as such funds come into his hands. 2 Beach on Trustees, pp. 1564-1565; Blauvelt v. Akerman, 24 N. J. Eq. 495; Smith v. Crews, 2 Mo. App. 269; McMahan v. Franklin, 38 Mo. 549. And when sued by the principal for an accounting the burden is upon the fiduciary to show that he has either paid the money over to the principal, or disbursed the same according to the latter's direction. Young v.

Powell, 87 Mo. 128; Hoffman v. Hoffman's Exr., 126 Mo. 499; Carder v. Primm, 47 Mo. App. 301, 52 Mo. App. 102; Diel v. Stegner, 56 Mo. App. 535. In the present instance, after twice answering by general denials, repudiating the fiduciary relation, Perry by his last answer admitted the trust, set forth what he claimed to be a complete list of the lands held by him for the joint account of himself and Lewis, affirmed that but one sale had ever been made, and declared that one-half the proceeds of that particular sale had been entered by him to Lewis's credit "in a book" kept by said Perry. But not only did Perry in his lifetime fail to produce any such book, or file an exhibit of its contents, but his attorneys and executors have been unable to find it since his death. There is no pretense that this money was ever paid over to Lewis, that Lewis ever directed its application, or that Perry had any lien upon it. When to this is added the fact that the deed executed by Perry in that transaction shows $1,050 greater consideration than admitted in his answer; the further fact that other sales were proved to have been made and the money received by him; and that upon his decease not a single foot of the trust lands in Missouri appears upon the inventory of his estate; the conclusion is irresistible that if all the Missouri lands were not disposed of before the filing of his answer, they must certainly have been sold between that date and the time of Perry's decease. Under such circumstances the book wherein the answer says his account of sales was kept, became of paramount importance. To himself, to his attorneys, to the court, to the widow and administratrix of his deceased friend whose half of $11,450 that voracious book is alleged to have everlastingly swallowed up, Perry owed the duty of producing the book, or filing with one of his several answers a statement of its contents. By so doing he might have made his accounts as clear as day. By failing to do so he has left them enveloped in mystery as im-

penetrable as a fog at midnight. This suppression of the very proof which he pleads as his defense, justifies the most unfavorable presumptions against him. The reason for the maxim, *"in odium spoliatoris omnia praesumuntur"* extends as well to concealment as to literal destruction of evidence. Armory v. Delamaire, 1 Stra. 505; 1 Greenl. Ev., sec. 37; State to use v. Porter, 9 Mo. 357; State v. Alexander, 119 Mo. 462; Pomeroy v. Benton, 77 Mo. 64. (2) A derelict agent or trustee who refuses to account for money belonging to his principal cannot plead independent matters of counter claim or setoff in an action brought by his principal for an accounting; because the principal's right to such accounting is absolute. The relation between them is not that of debtor and creditor, but one of trust. Before an agent or trustee, therefore, may treat himself as a debtor of the principal, so as to obtain the benefit of independent setoffs, he must first state his account and strike a balance. Pratte v. Scott, 19 Mo. 626; Bartels v. Kinneger, 144 Mo. 370; Deening Co. v. Webb, 76 Mo. App. 329. Many authorities hold that under no circumstances should a trustee of an open and continuing trust, when called upon to account, be heard to interpose any matter of counterclaim or setoff unrelated to the trust, even where a full accounting is had. Rose v. Hart, 2 Smith Leading Cases (8 Ed.), part 1, 355; Libby v. Hopkins, 104 U. S. 303; Cook County Bank v. United States, 107 U. S. 445; Tagg v. Bowman, 99 Pa. St. 376; Bank v. Barnum Wire Works, 58 Mich. 124; Peters v. Bank, 86 Tenn. 224; Smith v. Hall, 75 N. Y. 48; Scammon v. Kimball, 92 U. S. 362; Abbott v. Foote, 146 Mass. 334. If this is right doctrine in cases where the true state of the fiduciary's accounts are exhibited or ascertained, how much greater reason is there for applying it where, as here, the trustee conceals his accounts, and obstructs discovery at every step. (3) Another reason why both the $10,000 and $3,300 counter claims should have been rejected is that both were giv-

en for partnership debts of Thomson & Lewis, and Perry's endorsement of the $10,000 note was made for the credit and accommodation of the firm, as distinguished from the individuals composing the firm. Hundley v. Farris, 103 Mo. 78; Level v. Farris, 24 Mo. App. 441.

*Boyle & Priest* and *Morton Jourdan* for respondents.

In refusing to allow the offsets, the referee overlooked or disregarded the express provisions of section 4487, Revised Statutes 1899, which provides: "If any two or more persons are mutually indebted in any manner whatsoever, and one of them commences an action against the other, one debt may be setoff against the other, although such debts are of a different nature." Much is said in the points and authorities of the appellant with reference to the failure of Mr. Perry to make an accounting, and this contention is not supported by any of the testimony in this case. As suggested in our statement, Mr. Perry died within two years after the suit was brought and the executors were unable to find many papers which were supposed to have existed with reference to the transactions which had covered a period of about ten years prior to the bringing of the suit. There was and could have been no intention upon the part of Mr. Perry to withhold any information with reference to the condition of the account between Lewis and him. There was at all times, and is yet a large balance in favor of Mr. Perry's estate, and this condition began and continued from the first year in which Lewis engaged in the purchase and sale of tobacco with the financial aid and assistance of Mr. Perry, some ten years before the suit was brought.

BURGESS, P. J.—This is a suit for an accounting, brought August 23, 1894, in the circuit court of the city of St. Louis, by Virginia V. Lewis as administra-

trix of the estate of James W. Lewis, her deceased husband, against John D. Perry.

Defendants on February 11, 1895, filed an amended answer, to which plaintiff filed replication on March 12th next thereafter.    John D. Perry having in the meantime died, his death was suggested, and the suit revived against the defendants David R. Francis, Lewis Perry and Richard E. Perry, his executors.

. On February 1, 1896, the cause, upon stipulation between the parties, was referred to Charles W. Bates, a member of the St. Louis Bar, for trial of both the law and the facts, who, on July 21, 1902, after having heard the testimony, made and filed his report as such referee in the circuit court where the cause was then pending.    The referee found that the defendants, as executors of the Perry estate, were indebted to plaintiff in the sum of $9,976.31 1-2 and recommended judgment for that sum, with interest at the rate of six per cent per annum from the date of filing suit, and for costs.   Within four days after the referee's report was filed the defendants filed exceptions thereto, assigning various grounds therefor, some of which were sustained as shown by the judgment rendered, which is as follows:

"Now at this day the court having duly considered the defendants' exceptions to the referee's report heretofore filed and submitted herein, doth order that said exceptions be sustained as follows, to-wit: The item $2,500 ($12,500) found against defendants should be $11,450.00, making the total proceeds of sale $18,902.63, one-half of which, $9,451.31, defendants should be charged with.   The defendants should be allowed the amount of and given credit for the two notes, one for $10,000 with interest, amounting to $20,249.70, and the other for $3,320, with interest, amounting to $6,142, making a total of $26,391.70, and the same charged against plaintiffs.    Deduct from this the $9,451.31, leaves a net balance in defendants' favor of $16,940.39,

for which sum there is judgment in favor of the defendants and against the plaintiffs.

"It is therefore considered and adjudged by the court that the defendants, Lewis Perry, Richard E. Perry, David R. Francis, as executors of the estate of J. D. Perry, deceased, recover of the estate of James W. Lewis, deceased, in the hands of John F. Lewis, administrator *de bonis non* of the estate of James W. Lewis, deceased, the said sum of sixteen thousand, nine hundred and forty dollars and thirty-nine cents, together with the costs herein expended, and that the clerk of this court certify to the probate court within and for Howard county, State of Missouri, a copy of this judgment."

In due time plaintiff filed motions for new trial and in arrest, which were overruled, and he appeals to this court.

The case is brought before us by the short method, that is, by filing a certified copy of the judgment, order of appeal and abstract of the record.

Defendants challenge the sufficiency of the abstract upon the ground that none of the evidence is contained in or copied into the bill of exceptions as it appears in the abstract, which simply directs the clerk as follows: "Clerk here copy said transcript of the evidence and proceedings before said referee, inserting in their proper place, as indicated in said referee's transcript, the various documents and exhibits filed by said referee as aforesaid." But, for the purpose of a full understanding of the issues involved in this appeal, we think the abstract and report of the referee sufficient.

The referee's report, omitting formal preliminary matters, is as follows:

"This suit was instituted by the administratrix of James W. Lewis, on August 23, 1894, against John D. Perry, then living. The original petition calls for an accounting for sale of lands, the legal title to which

had been in Perry upon a trust alleged to have been be-
gun in 1886, in equal shares for Perry and for Lewis,
deceased.

"Perry's first answer, filed October 8, 1894, denies
all allegations of the petition, setting up independent
offsets. [An amended petition, alleging the same trust,
was filed October 23, 1894. The answer thereto filed
October 8, 1894, again denies the allegations of the pe-
tition and pleads offsets.] On February 11th, 1895, an
amended answer to this amended petition was filed.
Offsets were pleaded, to be discussed hereafter. The
answer admits the trust, gives a list of lands asserted
to be a true list and a complete one of the lands cov-
ered by the trusts; admits a sale of a definite part of
this land for $11,450, and alleges that Perry placed half
the proceeds to the credit of said James W. Lewis in
a book kept by him, the said defendant, and notified
said Lewis of placing the same to his credit. The re-
ply in substance claims more land in the trust, and
more sales, admits the sale alleged, but questions the
consideration, and denies that Lewis ever received
any part thereof. Mr. Perry died in August, 1895,
about a year after the institution of the suit. The suit
proceeded against his executors.

"At the hearing, plaintiff introduced evidence
tending to prove the sales by Perry under the trust
outside of the admitted sale. In the sale admitted in
the answer, consideration shown by the deed was
$12,500. While it is quite possible that the net pro-
ceeds were only $11,450, corresponding with the allega-
tion of the amended answer to the amended petition,
defendants offered no evidence to account for the dif-
ference, nor did they do anything to substantiate the al-
legations about placing half the proceeds to the credit
of James W. Lewis in a book kept by Perry, and notify-
ing Lewis that the same had been placed to his credit.
Not only was no account submitted on behalf of the trus-

tee, but no evidence in the case is offered explanatory of the sales of the land. Comparing the realty described as belonging to the trust, in the amended answer, with the realty set forth in the inventory of Mr. Perry's estate, filed in the probate court, there remain tracts unaccounted for, listed in the first paper and not in the second, of which the evidence tells us nothing. On this branch of the case, the trust, the defense limited itself to the introduction of a number of tax receipts, many of which have no color of being credits in a trust account.

"In the foregoing, the status of the defense toward an accounting in the trusteeship is alluded to chiefly for its bearing on the question whether the defendants are in a position to be heard on the three counter-claims or setoffs (be they in law or equity) which are set forth in their above-mentioned answer, on which the issues are joined.

"That amended answer claims setoffs as follows:

"1. A note of Lewis and of J. S. Thomson to the Laclede Bank for $10,000 at four months, dated May 22, 1886, guaranteed by Perry, and taken up by the latter March 9, 1892.

"2. A note of Lewis to Perry, dated April 19, 1887, one day after date, for $411.82.

"3. A note of Lewis and the above-mentioned J. S. Thomson, as partners, under the firm name of Thomson & Lewis, to Perry for $3,320, on demand, dated October 10, 1888.

"I make the following finding of facts: Both Thomson and Lewis lived in Glasgow, Missouri, both well to do, and interested in various business matters. For several years they were associated as partners in buying, packing and selling leaf tobacco. The tobacco of any given year comes to the market only during the year following its growth. Shortly after the middle of the succeeding year, say 1884, for the crop of 1883, the tobacco is out of the grower's hands. So that each

year's purchases are clearly separated from those of other years.

"Thomson and Lewis, as partners, handled the crop of 1883. On December 10, 1884, Thomson and Lewis, calling themselves by the firm name of Thomson, Lewis & Co., formed a partnership with Perry, 'for the purpose alone of buying leaf tobacco at such times and in such place as they may think to their best interest.' The crop of 1884 was handled under this partnership agreement, resulting in heavy losses. Thomson and Lewis, in the hope of making good the loss, carried on the business, with the same factories, etc., for the crop of 1885 (doing the purchasing in 1886). It is plaintiff's contention that Perry continued a partner as to this crop of 1885; but under the evidence, I am satisfied, and I find, that Perry was a partner for the crop of 1884 only, and was not a partner as to the crop of 1885.

"Perry, however, continued to aid Thomson & Lewis, by endorsing their paper in large amounts. Thomson & Lewis would send their notes to the Laclede Bank, St. Louis, the proceeds being placed to the credit of the Howard County Bank at Glasgow, of which Thomson was president, and in which Lewis held considerable stock. The Howard County Bank, in turn, placed these proceeds to the credit of Thomson & Lewis, or Thomson, Lewis & Co., as to which names under my views, it is not material to distinguish.

"The Laclede Bank held more or less security, either on the tobacco or on the deeds of trust on property of Lewis and of Thomson. As above stated, they were also largely secured by Perry's indorsements.

"In September, 1886, all this business went into liquidation. The Howard County Bank made a conveyance which was judicially declared to be an assignment for the benefit of its creditors. Lewis and Thomson had put mortgages on all of their property under which ultimately all their title was foreclosed.

"It is not necessary, in this case, to make findings as to the ultimate state of balances between the three individuals, the two banks and the firms, one or two, whose accounts have been investigated at the hearing. There is no doubt in my mind as to the heavy indebtedness of Lewis to Perry.

"On October 10, 1888, Thomson, assuming to act on behalf of Lewis and of himself, made a settlement with Perry in which the liability on the $10,000 note (the first off-set) if Perry should pay it, as he did thereafter, is fully recognized. The note for $3,320, the third off-set, was executed in pursuance of this settlement. I find that Thomson was authorized to make this settlement, and further find that Lewis ratified it after it was made. I find no evidence whereon a credit on either of these amounts could be based.

"Defendants practically concede, and I find that they failed as to their second counter-claim, being a note for $411, dated April, 1887.

"The note of $10,000 originated in the transaction of Thomson & Lewis or Thomson, Lewis & Co., as a firm, while engaged in buying in 1886, the tobacco crop of 1885. Perry was not a partner of that firm, his connection being limited to the firm which bought in 1885 the crop of 1884 as above found.

"The note of $3,320 is an indebtedness of Thomson and Lewis as individuals, to Perry, and is not a partnership obligation.

"One question as to evidence calls for special mention. Mr. Thomson, who was Mr. Lewis's partner, gave his deposition for defendant, while Mr. Perry was alive, but after Mr. Lewis's death (for the suit was brought by Mr. Lewis's administratrix), his evidence was objected to with sufficient definiteness on all the various subjects as to which he was interrogated. The objection was based on the claim that he was disqualified by the fact of Mr. Lewis's death. The objection would have force, had Thomson been offered as a wit-

ness for plaintiff, that is, in the interest of Lewis, his deceased partner; but I think him clearly a competent witness for the other side, as to every issue, save possibly the question whether Perry was a partner of Lewis and of Thomson in the business of 1886, being for the crop of 1885. In finding that Perry was not a partner for that year, I have ignored all evidence given by Thomson in his deposition. In my opinion the evidence, apart from Thomson's deposition, establishes the fact beyond reasonable doubt.

"As against this $10,000 claim, it is urged as a further defense that defendants held as collateral notes secured by a deed of trust on lands of Thomson and of Lewis dated December 1, 1895, for $30,000, which security should be exhausted before this note for $10,000 is entitled to consideration. On this point I find the facts as follows:

"Thomson and Lewis, under date of December 1, 1895, executed a series of notes for $30,000 to Perry, secured by a deed of trust on all their property in which Wayland was trustee. On the same day, December 1, 1895, Thomson and Lewis executed their notes for $32,000 to Nelson & Noel, secured by deed of trust to Mr. Perry as trustee, on the same property described in the last-mentioned deed of trust. Both of these deeds of trust were given for the same purpose, that is, to secure the Laclede Bank, as also Mr. Perry, on the liabilities of Thomson and of Lewis, and of the firm of Thomson, Lewis & Company, to them. The Nelson & Noel notes seem to have been based on a hope that cash could be raised on them, a hope which was not realized. It is clear to me that these two series of notes were issued for the same purpose; that they both came into the hands of the Laclede Bank; and that sale was made under the Nelson & Noel deed of trust, the proceeds being properly applied *pro tanto* to the satisfaction of the claims for which this collateral was given.

"Plaintiff urges that these deeds of trust are independent of each other; that the deed of trust in which Wayland was trustee was first delivered; that the property when sold was sold under this deed of trust, and that the property is therefore still subject to the first deed of trust, and that the collateral as to the $10,000 note in suit has not been exhausted.

"The answer is, that it is immaterial to determine which of these deeds of trust was first delivered. There was no intention to create two deeds of trust. The foreclosure under the Nelson & Noel deed sold out all the rights of Thomson and of Lewis in the property. After such sale under one deed of trust neither the bank nor Perry (and no one else who held this set of collateral notes under which the sale was not made), could claim any further right under the other deed of trust.

"This view is strikingly illustrated by the decision of the circuit court of Howard county at its November term, 1890, before the sale under deed of trust, in a suit wherein the assignee of the Howard County Bank is plaintiff, and the Laclede Bank, Perry, Thomson and Lewis, are defendants; the decree finds the Nelson & Noel deed of trust to be a first lien on the premises. Sale under that deed of trust followed.

"In my opinion, the other deed of trust, in which Wayland is trustee, securing notes to the amount of $30,000 to Perry, is *functus officio*. There is, therefore, no security to be exhausted before defendants make their claim on the $10,000, which is the subject of the first off-set.

"From the foregoing it results that I find that Perry at Lewis's death had a valid claim against him for $10,000 on the first counterclaim; and also had a valid claim against him under the note described in the third counterclaim of $3,320. I have made these findings, the evidence as to which, often remotely bearing on the issue, occupies much of this voluminous rec-

ord, so that in case I err in my views next to be expressed as to the admissibility of these off-sets claimed by defendants, all material necessary to a final determination of the cause may be before the court.

"This brings us to the most troublesome question in the case. Should defendant's off-sets be considered in this case?

"That defendant's causes of action are not statutory counter-claims is clear. They would not be so if Lewis in person were plaintiff. The claim of Perry against Lewis is individual whereas Perry's obligation is in his character as trustee. Mutality is lacking. [Tagg to use v. Bowman, 99 Pa. St. 379.]

"But defendant's claim, while not good in law, may still be entitled to recognition as an off-set in equity. Cross demands and counter-claims whether arising out of the same, or wholly disconnected transactions, and whether liquidated or unliquidated, may be enforced by way of off-set wherever the circumstances are such as to warrant the interference of equity to prevent wrong and injustice. [North Chicago Rolling Mill v. St. Louis Ore & Steel Company, 152 U. S. 596-615.]

"As is said in Kentucky Flour Co. v. Merchants' National Bank, 90 Ky. 226: 'Courts of equity in this State applied the doctrine of equitable set-off prior to the existence of our statute. It was found to be necessary to complete justice in cases where some fact existed impairing the efficacy of the legal remedy.' See, also, Elliott v. Pool, 6 Jones Eq. 45. 'The insolvency of the party against whom the off-set is claimed, is distinct ground for entertaining it.' [St. Paul Trust Co. v. Leck, 57 Minn. 87, 47 Am. St. Rep. 576, where there is a valuable note.]

"Plaintiff urges that injustice would be done to other creditors of Lewis's insolvent estate, by allowing the Perry estate to establish its counter-claims and thus virtually collect the claim in full, whereas other cred-

itors would only receive a dividend, but the better rea-
soning seems to be that no injustice is done other cred-
itors by allowing the adjustment of all accounts as they
stood at the death, assignment or bankruptcy of the
insolvent.   [See 57 Minn. supra; Aldrich v. Campbell,
4 Gray 284; Receivers v. Gas Light Co., 23 N. J. Law
283.]

"Such I think, is the law of Missouri.   In Smith
v. Spengler, 83 Mo. 412, the court quotes approvingly
from Darby v. Freedman's Co., 3 McArthur 349, as
follows:  'It is now well established that when the as-
signees or personal representatives of a bankrupt or
insolvent are plaintiffs or defendants, the right of set-
off will extend to all demands that could be proved by
or against the estate, without regard to the period when
they became due, or the person in whom the right of
action is nominally vested.'   See, also, Morrow's As-
signees v. Bright, 20 Mo. 298; Green v. Conrad, 114
Mo. 664.

"It seems to me defendants have the same right
to off-set which they would have if Lewis, in person,
had brought the suit.

"But these off-sets are claimed on behalf of a
trustee, who is called on to render an account of his
trust.  The doctrine is laid down in 22 Am. and Eng.
Ency. Law (1 Ed.), 311, Tit. 'Set-offs,' as follows: 'The
trustee, when called upon to account for the property
entrusted to him, cannot set off an independent debt
due him from the *cestui que trust.*'  [Bank v. Barnum
Wire Works, 58 Mich. 124, 55 Am. Rep. 660; Peters v.
Bank, 86 Tenn. (2 Pickle) 224; Scammon v. Kimball,
92 U. S. 362; Libby v. Hopkins, 104 U. S. 308; Cook
County Bank v. U. S., 107 U. S. 445; Abbott v. Foote,
146 Mass. 334.]

"But this general proposition must be subject to
exceptions.   The fact is recognized in First Bank v.
Barnum and in Abbott v. Foote, supra.

"If this were a case of accurate rendering of ac-

counts by a trustee, leaving no doubt as to the precise amount due under the trust, giving full information as to the trust estate not disposed of and demonstrating a proper administration, it seems to me equity would require, in view of the insolvency of the *cestui que trust,* the offset of any clearly-established debt of the *cestui que trust,* existing prior to the death of the *cestui que trust.*

"But as is said in Armstrong v. McKelvey, 104 N. Y. 179 (loc. cit. 185) the power of allowing equitable offset 'should be very cautiously exerted, and only in a case when the equity involved is entirely clear and certain. It is never justified save when other remedies are impossible and where the allowed demand is put beyond reasonable doubt.'

"In the case before us the equity is neither clear nor certain. It is impossible to state a full account; and impossible to say with certainty that upon a full statement, defendants would be entitled to the full allowance of the two off-sets under discussion. As long as the trust account is in such condition, I think it inequitable to entertain off-sets.

"It was the imperative duty of defendants to render an account of the trust. That they have wholly failed, is set forth in the beginning of this report, and appears again hereafter in the accounting. No explanation is offered. The death of Perry is not adequate cause, for it occurred about a year after the suit was filed. After first denying the trust, defendants admit it, through counsel giving a list of land as involved, but purporting to account only for one sale; making no statement whatever as to the other lands, much of which we infer from the evidence was sold in Mr. Perry's lifetime. The deed of the tract admittedly sold calls for a greater consideration than that set forth in the answer, and there is not a particle of evidence to substantiate the pleaded entry of a credit in a book.

"The life-long mutual friendship, confidence and regard between Lewis and Perry, the fact that no evidence is adduced that Lewis, a debtor to Perry on other accounts, ever called for a full account of the trust; the personal integrity of both parties as developed in the record; all this tends to make the court receptive of any reasonable explanation of Perry's failure to render an account.

"But the court cannot indulge in surmises. No explanation is offered, and defendants stand without having rendered any account, liable on a number of items under evidence brought out by plaintiff, and unexplained; with the impossibility of stating the true account of the trust, at least upon the record; and with a practical demonstration, at least as far as the record goes, that Perry took property under this trust, still unaccounted for, and of which no account can be taken in this case.

"If allowance of off-sets in this case be not a matter of legal right, but of equitable discretion, it seems plain that such discretion should not be exercised in favor of the estate of a trustee who has failed to account, who seems to be indebted on the trust beyond the items reached in this account.

"As to the $10,000 note, there is an additional reason for its rejection as an offset. While the note itself is signed by Thomson and by Lewis, individually, it originated in an accommodation endorsement by Perry for the partnership of the firm of Thomson & Lewis, engaged in 1886 in buying the tobacco crop of 1885. In settling Lewis's estate, I think this note should be looked on (going behind its mere form) as a partnership obligation.

"None of the three set-offs pleaded by defendants should be allowed in this suit.

"The accounting under the trust:

"1. The plaintiff put in evidence a deed from Perry to Richardson et al., dated June 16, 1890, con-

veying for the named consideration of $12,500 certain lands in Jefferson county, Missouri. Some of the lands are conveyed by the deed under the description given in the answer; of other lands described in the answer, an undivided one-half only is conveyed. It would seem that the deed includes lands not mentioned in the answer.

"2. The deed of Perry to Mercer conveyed property in Jefferson county, in the trust according to the answer, for $640, on April 12, 1890.

"3. The deed of Perry to Bradford conveyed property in Jefferson county, in the trust according to the answer, for $640, on December 20, 1888.

"4. In a letter of November 17, 1890, Perry writes to Lewis: 'There is still unsold of the Brockogle tract, which was a part of the property, 420 acres, worth about $5,000; I hope to get something over that. I sold off of that tract, two or three years ago, two 80-acre tracts for $8 per acre. Most of the payment has been made.'

"From the manner in which this communication is made, it may be fairly assumed that this property comes under the trust. Nothing indentified the Brockogle tract. I find nothing in the date or price to identify the sale referred to in this letter, with any of the sales covered by the three deeds above mentioned. The two 80-acre tracts at $8 per acre, make $1,280.

"5. On March 18, 1892, Perry writes in a letter to Lewis, "A few days ago I sold the balance of the Brockogle farm at Vineland for $5,000. There are 400 acres. I sold it payable for $500 per year, taking 10 years to pay, with interest at 7 per cent, which is to the credit of our joint account for the amount $5,000.

"These are all the sales as shown.

"From the lack of description of the sales of the last two tracts, it is not possible to say whether all the Jefferson county lands mentioned in the answer are accounted for.

"Lands in Tazewell county, Illinois, are mentioned in Mr. Perry's inventory, substantially agreeing with lands described in the answer.

"Nothing appears as to the tracts in Dent and Phelps counties, Missouri.

"It seems probable that Mr. Perry refers to the price realized by the sale to Richardson, in his letter of November 17, 1890, referred to under 4 above. In this letter he says: 'I have your letter of the 15th. If you will examine my letters, you will see that my figure is $11,450 just as it is here (except a dot) could not be made to mean $114.50, as you have stated it in figures, and could mean nothing if it did not mean $11,450. You also say this is the first time you have heard anything about the sale and again you say you suppose you would have let me know of it. Now, I believe I have not written you since the sale, about that or anything else, except the letter of 30 October, informing you in the letter of the cause why I did not write to you the time the sale was consummated, to-wit: I left for Colorado about the time of the sale, much complaining, and remained three months, and was much engaged after returning until I wrote you.'

"If this is understood to say that the net purchase price was $11,450 instead of $12,500 as stated in the deed, it fails to explain why it is so. Taking the statement for whatever it is worth, I think it falls short of the explanation which the trustee owes, and does not overcome the prima-facie case made out by the recital of the consideration of the deed.

"Defendants offered no further account, save that they introduced over 40 tax receipts, without any explanatory evidence.

"Two of these receipts are strangers to the record. A number are to Lewis and Perry, some are for lands in Kansas, in Howard county, Missouri, and in Linn county, Missouri. No such lands are mentioned in the answer or otherwise appear to be involved in the trust.

The trust is alleged in the petition to have begun in 1886. There is no claim of an earlier beginning, nor any evidence indicating it, I therefore have considered the tax receipts prior to 1886 irrelevant. Four tax receipts to Perry for 1888 and subsequent years as to the trust lands in Phelps county are shown. But as these lands admittedly belonging to the trust are unaccounted for, not even appearing in the inventory of Mr. Perry's estate, it seems under every aspect that no credit should be allowed on account of such tax bills here.

"Three amounts for taxes of 1887, for which defendants produce receipts to Perry, I think proper credits, since it may be reasonably inferred that the Jefferson county lands therein referred to are those which were sold, as above found. These tax bills are for $23.41, $17.35 and $66.61 respectively; they aggregate $107.37.

"In view of the fact that Perry must have had expenses such as taxes, expense of sale, etc., for which he obtains no credit here, in view of the failure of Lewis, as far as the record shows, to demand an account, and in view of the fact that Lewis, as found in this report, was Perry's debtor during all this while in a large amount, which is not allowed here, I do not deem it just to charge Perry with interest prior to the institution of this suit.

"I find that Perry sold trust property as follows:

| | | |
|---|---|---:|
| 1. | To Chesnut & Richardson.... .... | $12.500.00 |
| 2. | To Mercer...... ..... .... .... | 640.00 |
| 3. | To Bradford...... ..... ....... .. | 640.00 |
| 4. | The two 80-acre tracts in letter of Nov. 17, 1890 .... .......·. .... | 1,280.00 |
| 5. | The Brockerson tract......... .... | 5,000.00 |
| | | $20,060.00 |
| | From which deduct paid taxes.... .. | 107.37 |
| | Leaves the proceeds of sales.... .... | $19,952.63 |

"For half of which, $9,976.36, I find the defendants liable to plaintiff.

"I recommend a judgment for that sum, with interest at the rate of six per cent per annum from the date of filing suit, and for costs."

The exceptions to the referee's report were sustained and judgment rendered for defendants, upon the ground that the Perry estate should only have been charged with $11,450 realized from the sale by him of partnership lands, instead of $12,500, with which he is charged by the referee, and the disallowance by him of the note for $10,000, held by Perry against Thomson & Lewis or Thomson, Lewis & Co., and of the note for $3,320, held by Perry against Thomson and Lewis as individuals, both of which notes were produced by defendants as offsets against plaintiff's claims.

With respect to the first proposition, it is recited in the deed that the consideration for the land thereby conveyed was $12,500, which was prima-facie evidence that such was the consideration, and in the absence of evidence that a less sum was the purchase price received by Perry for said land, he was properly charged by the reference with that amount and interest thereon. It is true that by letter of Perry to James W. Lewis, of date November 17, 1890, he stated to Lewis that he had sold the land for $11,450, but this statement was doubtlessly made by mistake through lapse of memory, and did not overcome the recital in the deed as to the price received for the land.

As to the second proposition, the referee found that the notes for $10,000 and $3,320 were valid claims in favor of Perry against Lewis at the time of the latter's death, but they were not statutory counter-claims in favor of Perry against Lewis as an individual, whereas Perry's obligation to Lewis is in his capacity as trustee, and mutuality is, therefore, wanting. But it does not necessarily follow that because defendants' claims could not be pleaded as setoffs under the stat-

ute they cannot be pleaded as set-offs in a proceeding in equity, the right to do so depending upon the circumstances, among which is the insolvency of the party against whom the set-off is claimed, this being a distinct ground for entertaining it. [St. Paul & M. Trust Co. v. Leck, 57 Minn. 87.] In Rolling Mill Company v. Ore & Steel Company, supra, it is said: "Cross demands and counter-claims, whether arising out of the same or wholly disconnected transactions, and whether liquidated or unliquidated, may be enforced by way of set-off whenever the circumstances are such as to warrant the interference of equity to prevent wrong and injustice."

While the referee held that the defendants have the same rights to off-set the claim of Lewis against Perry's estate as they had against him personally, he also held that the offsets in question could not be considered because they are claimed on behalf of a trustee who is called upon to render an accounting of his trust and has failed to do so. The general rule is that "the trustee when called upon to account for the property intrusted to him cannot set off an independent debt due him from the *cestui que trust*." [25 Am. and Eng. Ency. Law (2 Ed.), 533; Bank v. Barnum Wire Works, supra; Peters v. Bank, 86 Tenn. 224; Scammon v. Kimball, supra; Cook County Bank v. U. S., supra; Abbott v. Foote, supra.] To this general rule, however, there may be exceptions, as intimated in Abbott v. Foote, supra, wherein it is said: "As is stated in Spaulding v. Backus, 122 Mass. 553, 'In the matter of setoff, courts of equity follow the courts of law, except where there is some equitable ground, growing out of the transaction or the relation of the parties, which brings the case within the general jurisdiction of a court of equity, and justifies granting relief beyond the rule of law. The existence of cross demands is not a sufficient ground for interference; the party seeking the benefit of the setoff must show some peculiar equity which en-

titles him to be protected against his adversary's demand.' " [Peters v. Bank, supra.] It is, however, said in Armstrong v. McKelvey, 104 N. Y. 179, that the allowance of an equitable offset, to reduce a demand in suit of an item which cannot be allowed as a legal offset or counter-claim, is only proper "when the equity invoked is entirely clear and certain, . . . when other remedies are impossible, and when the demand allowed is put beyond reasonable doubt." It is conceded by counsel for plaintiff in their reply brief that the doctrine of equitable setoff may be invoked in favor of an agent or trustee when he comes to settle his accounts, and that the insolvency of the principal may of itself entitle such agent or trustee to a setoff in equity when he has accounted for the money of his principal. But plaintiff insists, and the referee so held, that it was the imperative duty of defendants to make such accounting in order to avail themselves of the doctrine of equitable setoff. In support of this position both plaintiff and the referee lay much stress upon the fact that while the trustee, in his amended answer, admits the sale of certain partnership lands in Jefferson county, Missouri, to Chestnut & Richardson for the sum of eleven thousand four hundred and fifty dollars, the deed by him to them for said lands recites twelve thousand five hundred dollars as the consideration received; but the answer also alleges that, upon receiving said consideration, the trustee notified Lewis of the said sale and placed one-half the proceeds thereof—five thousand seven hundred and twenty-five dollars—to the credit of said Lewis in a book kept by Perry, and notified said Lewis of the placing of the same to his credit, when in fact defendants produced no book showing such entry. But the failure of defendants to produce such a book as indicated is of little significance when considered in connection with the letter by Perry to Lewis, of dat November 17, 1890, wherein he informs Lewis of the

sale to Chestnut & Richardson for $11,450.00, and states:

"There is still unsold of the Brockogle tract which was a part of the property 420 acres, worth about $5,000. I hope to get something over that. I sold off of that tract 2 or 3 years ago 2 80-acre tracts for $8 per acre, most of the payments have been made.

"You do not answer any part of my letter about the importance of getting together with Thomson and yourself to meet me here, go over our whole matters and come to a business determination what is best to be done. There is no longer any advantage in delays. The tobacco is simply eating itself up in charges. Interest is doing the same.

"We may be able to compromise some of our matters. Nothing can be lost in an effort. I can get Thomson, I have no doubt, to meet us. Write me what you think about the matter. All will feel better when we have consulted and determined upon the best course."

This letter imparted to Lewis information as to the sale, and is as much as could be expected from a book entry with respect thereto. The law does not require a book to be kept by a trustee under the circumstances disclosed by the record in this case, but that correct business methods require it to be done may be conceded. The discrepancy in the amount of the consideration received for the said land, as recited in the deed, and stated in said letter, and alleged in the answer of Perry, may be accounted for as an oversight or lapse of memory on the part of Perry, he not having the deed before him at the time of writing said letter or of making said answer. The amended answer was filed on February 11, 1895, and Perry died in August, 1895, about six months after the filing of said amended answer. With these facts considered in connection with Lewis's insolvency and Perry's letter to Lewis, in which he calls the latter's attention to the importance of the coming together of Thomson, Lewis and himself for the

purpose of going over their whole matters and compromising or settling them in some way, and in which he manifests no disposition whatever to delay settlement of their affairs, we are of the opinion that the referee, in the absence of evidence of fraud on the part of the trustee, was not justified in disallowing said set-offs upon the ground of the failure of Perry to make such an accounting as seemed to be thought necessary by the referee. Perry was entitled to have Lewis pay his debts to him as was Lewis to have Perry account to him for his half of the proceeds arising from the sale of the partnership lands, and it would be inequitable to disallow the one and allow the other.

Perry in his answer admits his trusteeship, and describes all the lands held by him as trustee for Lewis, as well also as the different tracts sold by him, giving the name of the persons to whom sold, and alleging that the lands described in the answer are all the lands which were held by him in which said Lewis, in his lifetime, had an interest, and that title to an undivided half interest in lands unsold was held by him as trustee for said Lewis. The referee, however, found that Perry sold other lands belonging to the trust estate for which he received $2,560, one-half of which belonged to Lewis, and for which the trustee had not accounted.

If, as held by the referee, the defendants stand, without having rendered any account, liable on a number of items under evidence brought out by plaintiff, and unexplained, and that Perry, under this trust, took property still unaccounted for, and of which no account can be taken in this case, it devolved upon the referee to ascertain, approximately at least, the amount of Perry's indebtedness to plaintiff, if, as he says, Perry seems to be indebted on the trust beyond the items reached in the account. The trust pertained exclusively to lands, and it does seem to us that it would be no very difficult matter, by examination of the records of the different counties in which the lands lie, to ascertain

what disposition Perry made of them, if any, and the consideration received therefor.

At the time of the judgment the amount found to be due defendants upon the offsets was $20,249.70, and it will not do to say, under the evidence as it appears from the report of the referee, "that Perry seems to be indebted on the trust beyond the items reached in the account," but the amount of such indebtedness should be stated; otherwise, how are the defendants to know with what specific amounts Perry's estate is charged?

The judgment we think  clearly erroneous as to the first item in the summing up of the referee's report, to-wit, the $12,500 received by Perry for the land sold to Chestnut & Richardson, and with which amount Perry's estate was properly charged by the referee. That error could, however, be corrected here. The judgment is correct, we think, in allowing Perry's offsets, but as the referee finds that Perry "seems to be indebted on the trust beyond the items reached in the account," another reference should be ordered and an account taken, so that the amount thus due to Lewis's estate may be ascertained, if possible.

The judgment is reversed and the cause remanded, to be proceeded with as herein indicated.  All concur.