ELLIS *v.* BAKER-MATTHEWS LUMBER COMPANY.

Opinion delivered February 12, 1923.

1. TRUSTS—CONTROL OF BENEFICIARY OVER TRUST FUND.—Where the owner of timber land, entered into an agreement for clearing land, to secure the performance of which he retained a lien upon all timber, logs and products thereof, and subsequently released such lien in consideration that the purchaser of the lumber derived from the land would hold for his benefit a stipulated sum per 1000 feet on all the lumber cut and delivered, the accumulation of the sum represented by such agreement created a trust fund in the hands of the purchaser of which the owner of the lands was the sole beneficiary, the assignment of which the trustee could not challenge.

2. SET-OFF AND COUNTERCLAIM—TRUST FUND.—As a trustee is not a debtor, he cannot set off a debt due to him individually against a trust fund, which must be paid to the beneficiary or to the person to whom the trust is properly assigned.

Appeal from Craighead Chancery Court, Eastern District; *Archer Wheatley,* Chancellor; reversed.

*Horace Sloan,* for appellant.

1. The stumpage fund was a trust fund. 31 Kan. 170, 1 Pac. 767; 49 Colo. 186, 112 Pac. 326; 17 Wyo. 268, 98 Pac. 590. Failure to pay Ellis' assignment constituted a breach of trust. 21 R. C. L., 10, § 5; 123 N. Y. 316, 25

N. E. 499, 11 L. R. A., 116. Appellee would have no right to set-off this trust fund against the indebtedness of Rhoads Brothers. 60 Ill. App. 506; 133 Mass. 359; 197 Mo. 438, 93 S. W., 337 129 Ark. 149.

2. Under the terms of the stumpage agreement, appellee was obligated to pay out the fund in question upon the mutual agreement of Yount and Rhoads Brothers, without reference to the state of account of Rhoads Brothers on other matters with appellee. 24 R. C. L. 808, § 16.

3. Under the laws governing assignments, appellee has no right to set-off against appellant an indebtedness due to it by Rhoads Brothers. C. & M. Digest, § 1195; Pomeroy, Eq. Jur., 3d ed., 1273, § 705; Words and Phrases, "Set-Off."

4. The instrument held by Ellis is an assignment, and not a release. 5 C. J., 846; § 6; 101 Ark. 582, 586; 87 Iowa, 443; 43 Am. St. Rep. 391; 81 N. Y. 454, 37 Am. Rep. 515; 141 N. Y. 495, 36 N. E. 394; 96 Me. 294, 90 Am. St. Rep. 346; 35 Ark. 293; 123 Ark. 24; 9 Ark. 118.

5. A debtor cannot set-off against an assignee plaintiff a debt due him by an intermediate assignee. The right of set-off is purely statutory, and the statute of this State precludes such a right of set-off. 2 Ark. 198, 206; C. & M. Digest, § 477; 46 Pa. 262; 2 Bailey (S. C. ) 354; 32 Ala. 494; 50 Ala. 10; 32 Tenn. (2 Swan) 494; 75 Mo. App., 567; 63 Pa. St. 322; Pomeroy, Eq. Jur. 3d ed. 1230, § 704.

6. The Rhoads Brothers indebtedness to appellee was unmatured and unliquidated at the time of the assignment from Yount to Rhoads Brothers, and from the latter to Ellis, hence not a proper set-off. 34 Cyc. 748; § 3; Id., 746, § 2; 2 Ark. 198; 5 C. J. 963, § 150.

7. Appellee is estopped to claim that the stumpage fund should be applied on its debt. 2 R. C. L. 631, § 41; 16 Mass. 397; Pomeroy, Eq. Jur., 3d ed. 1231, § 704.

*Lamb & Frierson,* for appellee.

1.  From the allegations of the complaint it will be seen that, under the rules of equity, it is a bill in the nature of a bill of interpleader, coupled with a bill for an accounting. 4 Pomeroy, Eq. Jur., §§ 1481, 1482; 92 Ark. 446; 192 Fed. 890. The right of equitable set-off, counterclaim or recoupment is so much broader than the statutory right that the complaint brings appellee well within the doctrine. 24 R. C. L. 865, § 70; *Id.* p. 843, § 48; *Id.,* p. 823, § 30; *Id.,* pp. 803-7, §§ 12-15; 34 Cyc. 633, *et seq.*

This court has held that in equity unliquidated damages arising from breach of independent contract between the parties can be set-off. 101 Ark., 493; 92 Ark. 594. Moreover, under the amendatory statute of 1917, C. & M. Digest, §§ 1195-6-7, any suit which the defendant could maintain as an independent cause of action is made the proper subject-matter for a counterclaim. 134 Ark. 311; 138 Ark. 38; 135 Ark. 531; 215 S. W. 622; 141 Ark 87. Ellis, as a plaintiff, could not have sued alone, but would have had to join both Yount and Rhoads Brothers in such suit. 235 S. W. 995; 47 Ark. 541.

2.  If the stumpage fund was ever a trust fund, it was for the protection of Yount against Rhoads Brothers, and of the latter against the former; hence, when Yount released it, the trust terminated.

3.  The instrument signed by Yount is not an assignment, but a release to Rhoads Brothers; and, being a release, there is no intermediate assignee, because there is only one assignment, that of Rhoads Brothers to Ellis. If there is only one assignment, all defenses and equities availing against the assignor can be set up against the assignee. 24 R. C. L. 819, § 26; 34 Cyc. 744, *et seq.*; 5 C. J. 962, § 150; 2 R. C. L. 625, § 34; *Id.,* 629, § 39. The general rule is that consent of a debtor is necessary before a part of a debt can be assigned. 2 R. C. L. 624, § 31; 5 C. J. 894, § 60.

4.   There is nothing in the evidence on which to base estoppel.

WOOD, J.   The appellee is a foreign corporation, engaged in the lumber business and having its principal office in Memphis, Tennessee.   Dr. W. E. Yount is a physician residing at Cape Girardeau, Missouri.   He owned some timbered land in Arkansas, near Rhoads Bros. & Company's sawmill.   Rhoads Bros. & Company was a partnership, composed of J. T., W. W., and S. S. Rhoads, engaged in running a sawmill near Black Oak, Arkansas.   E. B. Ellis was a merchant of Black Oak, Arkansas.   On October 17, 1917, W. E. Yount entered into a contract with the Rhoads Bros. & Company whereby he sold to them all the timber standing on 880 acres of land, more or less, for the consideration named in the contract of $17,600.   No cash was to be paid, but the consideration named represented the value of clearing the lands mentioned in the contract.   The provisions of the contract in regard to the clearing are as follows:

"In consideration of the foregoing, and to pay for said timber, the parties of the second part (Rhoads Bros.) agree to clear all said land ready for cultivation and ready for the plow, by removing therefrom all standing timber and underbrush and all down timber and logs and all other foreign matter which interferes with farming said land, except only the tract fenced off into a field at the tenant house, which tract is east of the cultivated field, and is grown up in young timber, but has no saw timber thereon.   This tract was formerly cleared, but has now grown up in young timber. The parties of the second part agree that they will begin the work of cutting the timber and clearing said land during the month of October, 1917, and will give said work their time and attention and push the same forward to completion as rapidly as can be, and will finish all said work of clearing within two years from this date, and will thus finish not less than two hundred acres thereof before May 1, 1918.   All land when thus cleared is to be turned back to said Yount for cultivation.

They also agree that they will begin at the south side of said land near the present millsite, and will cut timber and clear for cultivation as they advance from the south end of said land northward, in strips about four hundred feet wide, and that they will cut no timber on more than forty acres of said land in such strips in excess and advance of land cleared for cultivation as aforesaid, and that said Yount shall have a lien on all of the timber, logs and products thereof on the yard to secure the prompt and faithful performance of this agreement on the part of the second parties; but no lien herein mentioned shall ever be construed to authorize said Yount to prevent or interfere with the selling or marketing of said timber products, so long as second parties are not in default under the terms of this contract; and it is distinctly understood and agreed that the said sum of $17,600 is to be paid by second parties by and through their above described clearing work, and that said sum of $17,600 shall be deemed fully paid when said clearing work has been fully performed by said second parties under this contract.''

Prior to May 12, 1919, Rhoads Bros. & Co. had entered into a contract with L. D. Leach & Co. of Chicago, Illinois, by which Rhoads Bros. & Co. was to manufacture lumber for that company, and it was to make advances to Rhoads Bros. & Company as the lumber was manufactured. Baker-Matthews Lumber Company took over the Leach & Company contract and reimbursed it for the advances it had made to Rhoads Bros. & Company. On the 12th of May, 1919, Rhoads Bros. & Co. entered into a contract wtih the Baker-Matthews Lumber Company. This contract provided for the manufacture of 2,250,000 feet of various kinds of lumber at specified prices, which was supplemented by an agreement of August 12, 1919, changing the prices. On September 22, 1919, Rhoads Bros. & Co. entered into a supplemental agreement with Yount, whereby the terms of the former contract for clearing, which would have expired on October 22, 1919, were to remain in full force

and effect for an additional period of eighteen months. This contract of Sept. 22, among other things, provided:

"In consideration of the foregoing the parties of the second part do hereby agree that they will forthwith proceed in a diligent and business-like way to clear said lands ready for cultivation as provided in said former contract, and that they will clear not less than one hundred acres per month, and that they will, before the last day of October, 1919, clear one hundred acres of said land in addition to what is already cleared, and that they will likewise clear one hundred acres each month thereafter until they have fully complied with the terms of said original contract by having all the lands cleared ready for cultivation on which they have cut any timber, less only forty acres, by May 1, 1920. * * * It is further agreed and understood that this extension agreement is not in any way to release or impair the lien which was retained by party of the first part on timber and the products thereof as provided in the original agreement, and it is further agreed that, if the parties of the second part make default in any of the provisions and conditions of this contract, they are to have no further right to cut or remove any timber from any of said land or to remove any lumber from said land until this contract is fully complied with."

On November 3, 1919, Rhoads Bros. & Company entered into another contract with Baker-Matthews Lumber Co., which was entirely independent of the former contract between those parties of May 12, 1919. The contract between Rhoads Bros. & Company of November 3, 1919, provided that Rhoads Bros. & Company should manufacture for the Baker-Matthews Lumber Co. 2,000,000 feet of lumber at prices specified therein, and this contract also provided: "Performance of this contract by parties of the second part (Baker-Matthews Lbr. Co.) is contingent upon said first parties obtaining from Dr. W. E. Yount a release from any and all claims which he has, or might have, against the lumber to be

delivered under this contract; such release to be subject to the approval of said second parties."

On November 7, 1919, W. E. Yount executed the following instrument: "For and in consideration of the sum of one ($1) dollar and other good and valuable considerations in hand paid, the receipt of which is hereby acknowledged, I hereby release any and all liens or claims I may have against any and all lumber cut from and off my property in Craighead County, Ark., and also any lien or claim which I may have against any and all timber and lumber which may hereafter be cut from and off of any land owned by me in said county, and in lieu of said lien or claim Baker-Matthews Lumber Company agree to hold the sum of six ($6) dollars per thousand feet on all lumber hereafter cut and delivered to them by Rhoads Bros. & Co. coming from my property, and particularly all lumber to be cut on a certain contract executed November 3, 1919, between Rhoads Bros. & Company and Baker-Matthews Lumber Company for two million feet of lumber; said sum of six ($6) dollars per thousand feet to be held by said Baker-Matthews Lumber Company, to be paid out by them on the mutual agreement between myself and Rhoads Bros. & Company. It is understood that Baker-Matthews Lumber Company are not to retain the sum of $6 per thousand feet on any lumber except that manufactured and delivered under a certain contract dated November 3, 1919, between Rhoads Bros. & Co. and Baker-Matthews Lumber Company."

A sum in excess of $2,000 had accumulated in the hands of Baker-Matthews Lumber Comapny under the provisions of the last-mentioned instrument. On June 3, 1920, Yount executed to Rhoads Bros & Company the following instrument:

"For value received I hereby transfer, set over and assign to Rhoads Bros. & Company, all of my right, title and interest in and to the sum of two thousand dollars ($2,000) now in the possession of Baker-Matthews Lumber Company under the provisions of the contract dated

November 3, 1919, between Rhoads Bros. & Company and Baker-Matthews Lbr. Co., or under any contract subsequently executed between the same parties, and also under the release or contract of date of November 7, 1919, and signed by me, and also signed by Rhoads Bros. & Co., agreeing to the provisions of the release or contract of date November 7, 1919, hereby waiving all my rights of every kind and description which I may, or might, have under any of said contracts as to the said sum of two thousand dollars ($2,000).

"Witness my hand this 3rd day of June, 1920.

(Signed) "W. E. YOUNT.

"Witnesses: Frank Kelley, W. E. Walker."

On June 7, 1920, Rhoads Bros. & Company wrote to Baker-Matthews Lumber Company as follows:

"Gentlemen: As we have been in an awful pinch, and Mr. E. B. Ellis was one of our largest creditors and has helped us out on the balance of the $2,000, we hereby ask that you pay the $2,000 released and mentioned above to him and charge to our account.

"RHOADS BROS. & COMPANY

"By J. T. Rhoads."

Upon receiving the above communication, Ellis presented same to the Baker-Matthews Lumber Company, and they wrote him the following letter on June 8, 1920:

"Memphis, Tenn., June 8, 1920.

"Mr. E. B. Ellis,

"Black Oak, Arkansas.

"Dear Sir: You have presented to us this morning the assignment and release of W. E. Yount dated June 3, 1920, transferring $2,000 of the fund in our hands arising under certain contract of date November 7, 1919, and some subsequent contracts, with an order to pay the amount of this fund to you.

"We desire to advise you that we cannot pay this sum today, for the following reason: First. We do not know what amount will be due Rhoads Bros. & Co. under our contract until all the lumber is taken up and shipped

out, which we hope to have done this week.   If you are not already advised, it is true that Rhoads Bros. & Company, under their contracts with us, guaranteed the title to this lumber to be free and clear of all incumbrances.   We are in litigation with a creditor of Rhoads Bros. & Co. at Jonesboro in which this question is involved, and we therefore must say to you at this time we cannot pay out this money to you.''

On June 11, 1920, Baker-Matthews Lumber Co. instituted this action against Yount, Ellis, and Rhoads Bros. & Company.   Plaintiff alleged that it had in its hands over $2,000 which it had been holding for the protection of Yount; that it had advanced large sums of money to Rhoads Bros. & Company to pay for labor and to purchase timber; that, according to the contract with Rhoads Bros. & Co., the lumber manufactured by them was to be kept free from all liens; that this provision had been violated by permitting A. B. Jones Company to procure a judgment for over $2,500 and to levy an execution on the lumber, for which plaintiff had brought replevin.   The plaintiff alleged that Yount had attempted to assign the sum of $2,000 to Rhoads Bros. & Co., who had attempted to reassign the same to Ellis; that plaintiff had refused to accept the assignment; that the account between plaintiff and Rhoads Bros. & Co. involved large sums of money; that final settlement was not due until time of shipment of the lumber, a portion of which had not yet been shipped; that the account was so complicated and uncertain that it could not be determined whether plaintiff would be indebted to Rhoads Bros. & Company or not on the completion of their contract.   The plaintiff then tendered the sum of $2,000 into court, to be held pending the replevin litigation with A. B. Jones Company and final completion of the contract with Rhoads Bros. & Company and a settlement of its account with the plaintiff.

Ellis filed a separate answer, setting up his ownership of the $2,000 under the instrument signed by Yount and Rhoads Bros. & Company, above mentioned, and

denied the right of plaintiff to withhold payment of the
same.     He also set up that Rhoads Bros. & Company
were indebted to him for supplies furnished it in open-
ing up and clearing the lands for W. E. Yount, and al-
leged that the transfer and assignment of the $2,000
was made for his benefit to enable him to furnish Rhoads
Bros. & Company the supplies necessary to enable the
latter to perform its contract with Yount.     He made his
answer a cross-complaint, and asked for judgment in the
sum of $2,000 with interest from June 8, 1920, the time
plaintiff refused to pay him.

Rhoads Bros. & Company also answered denying
the allegations of the complaint, and made their answer
a cross-complaint, setting up a breach of the lumber
manufacturing contract between it and Baker-Matthews
Lumber Company.     Yount also filed a separate answer
and cross-complaint against the Baker-Matthews Lum-
ber Company, alleging its failure to pay him $6 per
thousand feet for stumpage. The matters growing out
of this cross-complaint were settled, and Yount has
passed out of the case.     It is not necessary to make fur-
ther reference to the pleadings filed by him.

The plaintiff filed a supplemental complaint against
Rhoads Bros. & Company to foreclose a mortgage ex-
ecuted by it to the plaintiff, which was answered by
Rhoads Bros. & Company.     Further reference to the
pleadings on the foreclosure of this mortgage is also
unnecessary.

Upon the pleadings and the documentary evidence as
above set forth, and the depositions of witnesses, the
court found that the only issue presented to it for de-
cision was that raised by the complaint of the plaintiff
and the answer and cross-complaint of Ellis concerning
the sum of $2,000 which had been tendered into court
and deposited with the American Trust Company, under
the court's direction.     On this issue the court found
"all the issues of fact and law in favor of the plain-
tiff, Baker-Matthews Lumber Company, and against the
defendant and cross-complainant, E. B. Ellis," and en-

tered its decree dismissing the cross-complaint of Ellis for want of equity, and directing that the sum of $2,000 in the hands of the depository trust company be paid over to the plaintiff. The court also found that the defendant, Rhoads Bros. & Company, was indebted to the plaintiff in the sum of $3,202.60, for which amount it rendered judgment against the individual members of the partnership. This decree was entered on January 7, 1922, from which Ellis prayed an appeal. Later, on April 21, 1922, the court made findings and rendered a final decree against Rhoads Bros. & Company, from which they prayed an appeal, but which has not been prosecuted by them to this court. At least, no brief has been filed in their behalf, and therefore their appeal will be treated as abandoned. We will decide only the issues presented by this record as they pertain to the controversy between Ellis and the Baker-Matthews Lumber Company. Such other facts as we deem necessary will be referred to as we proceed.

For convenience, the Baker-Matthews Lumber Company will hereafter be called the appellee, Ellis will be referred to as the appellant, and Rhoads Bros. & Company will be called Rhoads Bros.

It will be observed that the contracts between Yount and Rhoads Bros. provided for the clearing of the timber on the lands of Yount by Rhoads Bros. within a certain time and in a certain manner therein specified. To secure the performance of the contract on the part of Rhoads Bros., Yount retained a lien on all timber, logs and products thereof. The fact is established by the undisputed evidence that Rhoads Bros. had not complied with the terms of the contract, and were therefore in default, which, under the express terms of the contract, rendered the lien of Yount effective. As shown by the contract between appellee and Rhoads Bros. of November 3, 1919, the appellee had knowledge of the lien retained by Yount on all the timber and products manufactured by Rhoads Bros. from Yount's land, because on that day appellee entered into a contract with

Rhoads Bros. for the purchase of two million feet of lumber, at certain prices therein specified, to be manufactured from the timber on Yount's land, and the performance of this contract on the part of the appellee was contingent upon Rhoads Bros. obtaining from Yount a release of any and all claims which Yount had or might have against the lumber, such release to be approved by the appellee. Rhoads Bros. obtained such release, as evidenced by the instrument of November 7, 1919, signed by Yount, the effect of which was to release his lien on all the lumber cut from his land, provided the appellee would hold for his benefit the sum of $6 per thousand feet on all lumber cut and delivered to the appellee by Rhoads Bros., which sum was to be held by the appellee and to be paid out by it on the *"mutual agreement between Yount and Rhoads Bros."* By an indorsement on the instrument, Rhoads Bros. authorized the appellee to carry out the terms of the instrument.

The allegations of the complaint and the undisputed testimony show that the $2,000 now in controversy had accumulated in the hands of the appellee under the terms of the contract of November 3, 1919, between Rhoads Bros. and the appellee, and the instrument of November 7, 1919, which hereafter, for convenience, will be referred to as the "stumpage agreement." On the third day of June, 1920, for value received, Yount transferred or assigned his interest in the $2,000 to Rhoads Bros., waiving all rights of every kind which he had on said $2,000 under his contract with Rhoads Bros., and on June 7, 1920, Rhoads Bros., by letter, requested the appellee to pay the same to Ellis, which the appellee refused to do.

Now, considering the various written instruments set out above, especially the contract between Rhoads Bros. and the appellee, of November 3, 1919, and the stumpage agreement of November 7, 1919, to which the appellee became a party, and by which it was bound in purchasing and receiving from Rhoads Bros. the lum-

ber manufactured by them, with knowledge of Yount's lien; and considering likewise the correspondence between Yount and the appellee, and the oral testimony, we have reached the conclusion that the $2,000 in controversy was a trust fund, of which Yount was the sole beneficiary. A letter in the record from Yount to the appellee designates the same as a "trust fund," and a letter from appellee to Yount refers to the fund, and states that it is to be paid out by the appellee on the joint agreement of Yount and Rhoads Bros., and asks Yount to get Rhoads Bros.' written order authorizing the appellee to pay the balance due on the fund. Baker, in his testimony, designates it as "a sort of trust fund held for these parties, to be determined *between them* as to whom this was to be paid." The fund was in lieu of the lien which Yount had on the lumber which the appellee had purchased from Rhoads Bros. The appellee, knowing that Yount had a lien on the lumber, agreed, in effect, that, if Yount would release his lien and allow it to purchase the lumber from Rhoads Bros. unincumbered by such lien, they would hold this sum of $2,000 for his sole benefit and would pay the same on the *mutual agreement between Yount and Rhoads Bros.* Such is the unambiguous wording of the stumpage agreement, by which, as we have said, the appellee was bound. The assignment of June 3, 1920, of Yount to Rhoads Bros. and the written order of Rhoads Bros. of June 7, 1920, asking that the appellee pay the $2,000 to Ellis, was tantamount to a *mutual agreement between Yount and Rhoads Bros.* that Ellis should receive the fund. The testimony of Yount and J. T. Rhoads was to the effect that the $2,000 in controversy was to constitute a kind of budget, the larger part of which was to be paid to Ellis. Yount so understood it at the time he executed the assignment. Yount realized that he would receive the benefit from the use of the fund by Rhoads Bros. in paying Ellis the amount advanced by him to Rhoads Bros., because that would better enable Rhoads Bros. to carry out their contract of clearing Yount's land. At

any rate, that was a matter solely for the determination of Yount and Rhoads Bros., a right which appellee, the trustee, could not challenge.

Having reached the conclusion that the fund in controversy was a trust fund, the appellee could not refuse to pay Ellis, to whom the fund had been assigned, without a breach of the trust. The appellee could not hold the fund as if the same belonged to Rhoads Bros. and claim the right to set-off against it any indebtedness that Rhoads Brothers might be due the appellee. A trustee cannot set-off against the trust indebtedness an independent debt due him individually. The trustee is not a debtor. Therefore, any debt owing by him or due to him individually is not due in the same right or capacity as a trustee, and lacks mutuality. He cannot set-off such debts against the trust fund, but must pay the same to the beneficiary or the one to whom the trust is properly assigned. The trustee cannot in this way reap a personal advantage from his trust relation. 39 Cyc. 479; 24 R. C. L. sec. 16, p. 808; *Knowles* v. *Goodrich,* 60 Ill. App. 506; *Dodd* v. *Wishi,* 133 Mass. 359; *Smith* v. *Perry,* 197 Mo. 438. See also *Sorrels* v. *Childers,* 129 Ark. 149.

Having reached the conclusion that, as between Ellis and the appellee, the fund in controversy belongs to Ellis, the other interesting questions presented in the elaborate briefs of counsel pass out. The decree is therefore reversed, and the cause will be remanded, with directions to enter a decree for Ellis in accordance with the prayer of his cross-complaint.