## EDWARDS *v.* WILLIAMS.

1. ADMINISTRATOR—INFANTS—AGREEMENT.—An administrator, the husband of a distributee who was entitled to one-third of intestate's estate, made an agreement in his own name, individually, with an insolvent debtor of the estate, in order to secure priority of lien, whereby, in consideration of a preferred judgment, he bound himself to assign to said debtor "that portion of the money that may be collected on said notes, over and above two-

thirds thereof, that will be coming to myself and said wife." *Held,* that the agreement called for an assignment of only the wife's interest in intestate's estate, and did not, and could not, affect the interests of the other distributees, who were infants, in the moneys recovered under such judgment.

2. IBID.—IBID.—PAYMENT.—An administrator cannot discharge himself of liability to infant distributees by executing a note for the amount in hand payable to his own wife, the guardian of these distributees, in her individual capacity.

3. IBID.—IBID.—DISBURSEMENTS.—Exceptions alleging error in not giving an administrator credit on his account for disbursements for infant distributees, out of the *corpus* of the estate, for tuition, horse, cow, piano, and cash, not sustained.

4. IBID.—IBID.—EQUITABLE SET-OFF.—Where an insolvent administrator has in hand a fund improperly received by him belonging to infant distributees, he will not be allowed credit on his accounting for the board bill of these distributees, due to himself, amounting to less than the fund so in his hands.

5. IBID.—DISAVOWAL OF TRUST.—The statute of limitations does not run in favor of an administrator against the distributees, when his last return did not purport to be final, and he received money for the estate thereafter. In such case, there was not a disavowal of trust.

6. ERRORS NOT APPEALED FROM—COMMISSIONS cannot be allowed an administrator on payments not authorized by law; and an omission of commissions inadvertently overlooked and discovered after appeal taken cannot be corrected on appeal.

Before FRASER, J., York, November, 1891.

Action commenced in the Probate Court of York County in June, 1890, by Eliza P. Edwards and Joseph Pratt against Grandison Williams, as administrator, &c., and Mary A. E. Williams. The decree of the Probate Court was as follows:

This proceeding is by the two children of Henry Pratt, deceased, against Grandison Williams, as administrator *de bonis non* of the estate of their father. The wife of Grandison Williams is joined with him as a defendant. She was the widow of Henry Pratt, who died intestate. After the death of Henry Pratt, his widow intermarried, in February, 1866, with the said Grandison Williams. Letters of administration upon the estate of Henry Pratt were first issued to William Hardin, who departed this life some time in 1867; and thereafter, on July

21st, 1868, Grandison Williams was appointed administrator *de bonis non.* On the 26th day of June, 1872, he filed his fourth return as such administrator, showing a balance in his hands on that day of $12,890.53. When now called upon to make his final accounting, the administrator claims no further disbursements on behalf of the estate except the sum of $2.50 paid on the 28th of June, 1872, to the probate judge, and the sum of $7,452.35 alleged to have been paid one N. R. Eaves, and $100 paid counsel for services in this proceeding.

The administrator, however, claims to have made large disbursements on behalf of the plaintiffs during their minority, mostly for board and tuition. He also seeks to take credit as against each of the plaintiffs herein for $1,333.33, being the one-third of a note for $4,000 by him executed and delivered to his wife on the 13th of November, 1872. He also seeks to charge Eliza P. Edwards, one of the plaintiffs, with board and tuition, and sums of money alleged to have been expended for her for board and tuition, amounting in the aggregate to $1,752.50. He also seeks to charge her with a horse and cow, $220, and piano, $325. He further seeks to charge Joseph Pratt with $1,234.42 board, and money paid for board and tuition, and with a horse and cow at $235, and with $400 cash paid. In order to sustain the charge of $1,333.33 as against Joseph Pratt, he introduces a number of receipts for cash paid to him.

The plaintiffs herein make the objection that the administrator cannot be permitted to thus present charges against them for board and tuition, and for moneys expended for board and tuition. And further, because the administrator has himself put in evidence the records, showing the appointment of his wife as the guardian of these plaintiffs. Neither of the letters of guardianship are under the seal of the court, but I deem it unnecessary to consider the effect of this omission. An administrator certainly can have no right to disburse the estate of minor distributees, and in so doing to use up the entire corpus of the estate and bring the distributees in debt to him. In the statement filed by the administrator in this proceeding on the 18th of June, 1891, he claims that Mrs. Eliza P. Edwards is indebted to him in the sum of $1,731.21, and that Joseph Pratt

is indebted to him in the sum of $1,078.38.    An administrator may be permitted, under exceptional circumstances, to make some disbursements for minor distributees, but these surely can only be sustained when justified by necessity.

The plaintiff further objects; that charges for board were excessive, especially when taken in connection with the services rendered by them.    I am of the opinion that the charges are excessive, but the evidence is too meagre for me to attempt to fix the proper amounts.    Moreover, the charges will ·be wholly disallowed. for the reason hereinafter given.    It appears that, under proceedings in this court, the real estate of Henry Pratt, deceased, was partitioned.    In that proceeding the real estate was assigned to the defendants herein, and they were adjudged to pay into court, for the use of Joseph Pratt and Eliza Pratt, now Edwards, the sum of $1,410.87, payable the 1st day of February, 1870.    Subsequently, this money, something over $1,500, was paid into the Probate Court.    Grandison Williams was told, it seems. that the money was unsafe in the hands of the then probate judge; he applied to the probate judge, and the money, less commissions, was repaid to him.    He admits that he thus received something over $1,400.    There was no warrant of law for the probate judge paying the money over to him, nor for his receiving it; but it remains that he did receive it, and that it was the money of these plaintiffs.    If he has, therefore, any just claim against the plaintiffs for board and tuition, he has in his hands a fund out of which he can reimburse himself; and I find as a matter of fact, that the fund is amply sufficient for that purpose.    He is now insolvent, as proven, and must do equity in asking that these plaintiffs, as matter of equity, pay him for board and tuition and for moneys expended in that behalf.

The attempt to charge these plaintiffs with any part of the note given to his wife on the 13th of November, 1872, must fail.    There is nothing in the testimony which goes to satisfy the court that this note had anything whatever to do with the estates of these plaintiffs.    No receipt was given by the wife, as guardian, to the husband, as administrator, for any amount; he seems to have attended to all the matters himself, and she,

12—39

when upon the stand, was unable to explain for what the note was given. The note is payable to her individually, and the administrator could not by simply executing such a note, acquit himself of liability as administrator. Whatever may have been paid to N. R. Eaves, was paid to him under the agreement which has been put in evidence. By the very terms of this agreement, it is established that the interest of these plaintiffs was not to be affected. However equitable it may be that the plaintiffs should contribute to such amount as may have been paid to N. R. Eaves, the court can require nothing of them in that behalf. The charge of a horse against each of the plaintiffs must be disallowed. The horses cannot, under the testimony, be said to have been furnished to the plaintiffs. The charge of a piano, alleged to have been purchased for Mrs. Eliza P. Edwards, must also be disallowed. She testifies that she understood that the piano was given to her, and has elected in this proceeding not to take the same, if it is now to be converted into a purchase for her out of her own estate; and the piano is in the possession of the administrator.

An exhibit is appended to this decree, showing how the judgment of the court is reached as to figures. Nothing is adjudged in favor of Mrs. Williams. She is not asking it, and it may well be said that the marital rights of her husband have so attached that what was hers became his.

It is adjudged, that the distributive share of Mrs. Eliza P. Edwards, in that portion of the estate of Henry Pratt, deceased, which is now ready for distribution, is the sum of ten thousand six hundred and ninety-two dollars and seventy-four cents; and Grandison Williams, administrator *de bonis non*, in whose hands the same is, is directed to pay the same to her, with interest from date, and leave is given to her to issue execution accordingly. And it is adjudged, that the distributive share of Joseph Pratt, in that portion of the estate of Henry Pratt, deceased, which is now ready for distribution, is the sum of eight thousand two hundred and ninety-two dollars and seventy-four cents; and Grandison Williams, administrator *de bonis non*, in whose hands the same is, is directed to pay the same to him, with interest from this date; and leave is given

to plaintiffs to issue execution jointly or separately, as they may desire. * * *

I will add, that if the plaintiffs were to allow the amounts claimed for board and tuition, and for moneys expended in that behalf, deducting therefrom the amount received by the administrator from the probate judge—the real estate money—the sum adjudged for them, as shown by the statement appended hereto, would not be lessened. The exact amount received from the probate judge, and the exact time of receiving it, is not fixed by the testimony; but the administrator testified that he paid in over $1,500, and drew out over $1,400, the probate judge reserving his commissions. Now, the amount was $1,410.87, with interest from February 1, 1870. That would make $1,501.40 on January 1, 1871. Deducting $18.02 as commissions, the administrator must have received (whatever the date) as much as $1,483.38. I do not think that the expenditures claimed were at any time as much, in the aggregate, as the interest then accrued.

This decree was sustained in the Circuit Court, and defendant, Grandison Williams, appealed.

*Mr. A. G. Brice,* for appellant.

*Messrs. Paul Hemphill* and *G. W. S. Hart,* contra.

April 10,.1893. The opinion of the court was delivered by

MR. JUSTICE McGOWAN. Henry Pratt, of York County, died intestate in 1864, possessed of considerable property, both real and personal, and leaving as his heirs at law, his widow, Mary A. E. Pratt, and two children, Eliza, now the wife of G. C. Edwards, and Joseph Pratt. William Hardin obtained letters of administration on the estate. In 1866, Mrs. Pratt married Grandison Williams, and in 1867, before the estate was fully administered, Hardin, the first administrator, died; and in 1868, the said Grandison Williams was appointed administrator *de bonis non* of the unadministered estate. As such administrator he made four returns; and in 1890, after the children of the intestate had attained their majority, they instituted this

proceeding in the Court of Probate for an account by Grandison Williams, administrator of the Pratt estate, and a judgment against him for their respective distributive shares.

The defendant, Williams, answered, alleging that, upon a proper accounting, he owed the plaintiffs nothing, but had overpaid them largely. The defendant, Grandison Williams, with his answer, filed a statement of his account as administrator, to which there were numerous exceptions, and the judge of probate, after taking much testimony and hearing argument, rendered his decree, finding that the distributive share of Mrs. Eliza P. Edwards in that portion of the estate of Henry Pratt, deceased, which is now ready for distribution, is the sum of $8,818.74, and the amount due Joseph Pratt is the sum of $8,292.74, besides interest on both shares as stated. The decree of the probate judge, W. H. McCorkle, Esq., gives a clear and full statement of the facts of the case, with the points made and ruled by him, and (omitting the statement of the account) should appear in the report of the case.

The defendant appealed to the Circuit Court upon various grounds (eighteen in number), and the case coming on for trial by Judge Fraser, he concurred with the probate judge both in his findings of fact and his rulings of the law thereon, and dismissed the appeal. Thereupon the defendant appeals to this court upon various exceptions, which are all printed in the record. The questions at issue arise mainly upon credits claimed by Williams as administrator, in his account before the Probate Court. We will not attempt to go into detail and consider all the items of account *seriatim;* but, following the course of appellants' counsel, consider the points involved under four general heads, as follows:

*First.* Is Williams, as administrator, entitled to credit for the $7,452.35, claimed to have been paid to one N. R. Eaves, or any part thereof? It seems that among the unadministered assets of the estate of Pratt, which fell into the hands of Williams, upon his becoming administrator, &c., were two notes against said N. R. Eaves, amounting in the aggregate to about $20,000. Eaves was embarrassed—indeed, believed to be insolvent; and in order that these notes to

the estate of Pratt might be placed in such a position as to have priority over other creditors of Eaves, Williams and Eaves entered into a written covenant, by which, in consideration that Eaves would accept the service of a writ, and make no defence or delay in the action on the notes, so that judgment by default might be taken in advance of other creditors, Williams in his individual capacity "agreed to assign, and does assign, to said N. R. Eaves that portion of the money that may be collected on said notes, over and above two-thirds thereof, by reason of the acceptance of service, and failure to plead in said suit, that will be coming to myself and said wife, as distributees of Henry Pratt, deceased." Signed, sealed and delivered by the said Grandison Williams. The distributees of the estate of Pratt were three in number—the widow and two children—each entitled to one third part of the estate; and we think there can be no doubt that the portion of the anticipated recovery which Williams undertook to assign to Eaves was his wife's third thereof, and was not intended to trench upon the other portion of the estate. It seems that Eaves kept faith, and carried out his agreement, that the judgment was recovered in advance of others, and that a considerable amount of money was realized on it; and Williams now claims that he is entitled to credit as administrator for $7,452.35, which is the amount he claims to have paid (one-third) back to Eaves, under the covenant aforesaid. Something was said in the argument here about the contract being fraudulent and void, and it was questioned, whether Williams ever actually paid the money to Eaves or his representatives. But we do not think it is necessary to go into that matter here; for whether the contract was or was not *illegal*, or the money was or was not paid to Eaves, we agree with the Probate and Circuit Judges, that Williams had no legal right to bind his minor step-children, even if he had undertaken to do so as administrator of their father's estate, and that he is not legally entitled to the credit claimed.

*Second.* It seems that on November 13, 1872, Mrs. Williams was appointed guardian for her two children, the plaintiffs, and that on that day, Williams, as an individual, executed a note to his wife in her individual capacity for $4,000; and

he now claims that he gave that note as administrator, and that it 'was given to his wife as guardian of the children, and that he, as administrator, is entitled to a credit of $1,333.33 (one-third of the note), as against each of the children. Upon this point the judge of probate says: "The attempt to charge the plaintiffs with any part of the note given to his wife on November 13, 1872, must fail. There is nothing in the testimony which goes to satisfy the court that this note had anything whatever to do with the estates of these plaintiffs. No receipt was given by the wife, as guardian, to the husband, as administrator, for any amount. He seems to have attended to all the matters himself, and she, when upon the stand, was unable to explain for what the note was given. The note is payable to her individually; and the administrator could not, by simply executing such a note, acquit himself of liability as administrator," &c. We agree that this would be a very easy way of discharging his liability as administrator. We think that the testimony of Williams, offered to prove an intention of the parties, inconsistent with the terms of the note itself, was properly excluded. We see no error here.

*Third.* The defendant administrator also seeks to charge Eliza P. Edwards, one of the plaintiffs, with board and tuition, and sums of money alleged to have been paid for board and tuition, amounting in the aggregate to $1,752.50, and for a horse and cow, $220, and piano, $325; and to charge Joseph Pratt with $1,236.42, for board and tuition, and with a horse and cow, at $235, and with $400, cash paid. It seems that the children were small, at the time Mr. Williams married their mother. When he came into the family, he found them living with their mother, and that was their home, where they grew up, helping as members of the family. The judge of probate held, that an "administrator certainly has no right to distribute the estates of minor distributees, and in so doing to use up the whole corpus of the estate, and bring the distributees largely in debt to him. An administrator may be permitted, under exceptional circumstances, to make some disbursements for minor distributees, but these surely can only be sustained when justified by necessity," &c. He disallowed

the charge of a horse for each of the plaintiffs, upon the ground that the testimony did not support the claim. The charge of a piano, alleged to have been purchased for Mrs. Edwards, he also disallowed. She (Mrs. Edwards) testified that she understood that the piano was given to her, and elected in this proceeding not to take the same, if it now was to be converted into a purchase for her out of her own estate; and the piano is in possession of the administrator.

As to the board, the probate judge held as follows: "The plaintiffs object, further, that the charges for board are excessive, especially considering the services rendered by them as members of the family. I am of opinion that the charges are excessive, but that need not be considered now, as I disallow the charges wholly, for the reason hereinafter given. It appears that under proceedings in this court, the real estate of Henry Pratt, deceased, was partitioned. In that proceeding the real estate was assigned to the defendants herein, and they were adjudged to pay into court, for the use of Joseph Pratt and Eliza Pratt (now Edwards), the sum of $1,410.87, payable February 1st, 1870. Subsequently, this money, over $1,500, was paid into the court. Grandison Williams was told, it seems, that the money was unsafe in the hands of the then probate judge. He applied to the probate judge, and the money, less commissions, was repaid to him. He admits that he thus received something over $1,400. There was no warrant of law for the probate judge paying the money over to him, nor for his receiving it; but it remains that he did receive it, and that it was the money of these plaintiffs. If he has, therefore, any just claim against the plaintiffs for board and tuition, he has in his hands a fund out of which he can reimburse himself; and I find, as a matter of fact, that the fund is amply sufficient for that purpose. He is now insolvent, as proved, and must do equity, in asking that these plaintiffs, as matter of equity, pay him for board and tuition, and for moneys expended in that behalf," &c.

It seems to us that this is a proper case for equitable "set-off." As was said in *Falconer* v. *Powe*, Bail. Eq., 158: "It is true, that at law these payments could not have been set up in

discount; for the demands would not have been in the same right, nor even between the same parties. There the defendant must have been sued in his own right, and not as administrator; and the commissioner, and not the present complainants, must have been plaintiff. But in this court (equity) we look to the parties really interested. The complainants are the persons to whom the proceeds of the bond belong; and the advancements made by the defendant were for their benefit. It is, therefore, a clear case of mutual demands, existing in equity between the parties to the suit; and they are to be adjusted in the same way as in other cases of *discount*," &c. We see no error here. It was admitted in the argument for Williams, the administrator, that "he was not seeking to recover these charges, but merely to *off-set* them, in stating his account for settlement."

Under exception 9, it was claimed that "the last return of the administrator, and the execution of the $6,000 note to Mrs. Williams, the guardian, in 1872, was equivalent to a repudiation of the trust, and put the statute of limitations to running, and that the action was barred six years after the plaintiffs came of age." The last return does not purport to be a final settlement, and the administrator, in his testimony, admitted that he had received moneys due the estate after that return. There was no testimony showing that the administrator ever did an act to discharge himself of *the trust*, which he had assumed for the children of his wife.

Exception 10 complains that the probate judge did not allow the defendant "credit for his commissions on the whole amount charged against him and due plaintiffs, nor upon the accumulations of interest thereon, nor upon the amounts paid to and for the plaintiffs." We are not quite sure that we understand clearly what is here meant, as we are not familiar with the figure account. If payments claimed to have been made were disallowed, we suppose, of course, that the administrator could not be allowed commissions on alleged payments never made. If there has been discovered, since the appeal was taken, "*an oversight*" as to commissions on an item, it is not within the power of this court to correct it, but it ought to be corrected by the consent of the parties themselves.

The judgment of this court is, that the judgment of the Circuit Court be affirmed, and that the case be remanded to the Probate Court of York County for such further proceedings as may be deemed necessary to carry out the conclusions herein announced.