### 3927.  TIMMONS *et al.,* trustees, *v.* CITIZENS BANK OF WAYNESBORO.

A contract with a building contractor stipulated that he should be paid a specified sum for the work, payable in monthly instalments in such sums as the architects might in writing certify to be due. The owner reserved the right to withhold the payment of any instalment when necessary to protect himself against any outstanding claims or liens for either labor or material. *Held:* (1) When the architects issued a certificate that a specified sum was due under the terms of the contract,

the certificate was assignable, and the assignee could enforce it in a court of law, as a legal assignment of a particular fund. (2) In such a suit by the assignee it was not necessary that the petition should negative the existence of liens for labor or material. This was matter of defense.

DECIDED APRIL 16, 1912.

Complaint; from city court of Tifton—Judge R. Eve. November 18, 1911.

*J. H. Price, J. B. Murrow, J. J. Murray,* for plaintiffs in error. *Perry, Foy & Monk,* contra.

POTTLE, J. The Citizens Bank of Waynesboro sued certain persons as trustees of the Baptist Church of Tifton, the allegations of the petition being substantially as follows: The church is an unincorporated voluntary association of persons for the purpose of divine worship. The association is composed of a congregation of members of this church, and owns certain real estate situated in the city of Tifton, consisting of a lot of land together with the church edifice thereon, which constitutes the only property owned by this assemblage of persons. The property is held and controlled for the use of the congregation by certain persons designated as trustees of the church. The plaintiff holds a claim in the principal sum of $1,200 against the trust estate in the control of the defendant trustees, which claim arose as follows: A written contract was entered into between a committee representing the church and Wagener, a contractor, for the building of the church edifice situated on the lot above referred to. This contract provided that the work of construction should be done under the direction and superintendence of certain named architects, and that the contractor should provide all materials and labor for all the work mentioned in the specifications and drawings prepared by the architects. There are other details in the contract which are not material to the questions presented for decision. The contract further provided, in substance, that if for any reason, during the progress of the work, the contractor refused or neglected to carry on the work in accordance with the plans and specifications, the owner should have a right to terminate the employment and complete the building, and that in that event the contractor should not be entitled to receive any of the payments until the work was wholly finished, at which time final settlement should be had. The contract contained this provision: "It is hereby mutually agreed that the

sum to be paid by the owners to the contractor for the said work and materials shall be $25,400.00, subject to additions and deductions as hereinbefore mentioned. Payments are to be made on the first of each month for not more than 85 per cent. of the amount of the materials and labor furnished, and shall be made on written certificates of the architects to the effect that such payments have become due. Final payment is to be made when the work is completed and accepted by the architects and owners. If at any time there shall be evidence of any lien or claim for which, if established, the owners of the said premises might become liable, and which is chargeable to the contractor, the owners shall have the right to retain from any payments then due, or thereafter to become due, an amount to sufficiently indemnify them against such lien or claim." It was further stipulated that "no certificate given or payment made under this contract, except the final certificate or final payment, shall be conclusive evidence of the performance of this contract, either wholly or in part, and that no payment shall be construed to be an acceptance of defective work or improper materials."

On February 20, 1908, while the contractor was actually engaged in the erection of the church building, and "while actually entitled to the amount designated in the certificate hereinafter mentioned, as part payment for work done and material furnished in the erection of said building," the architects issued to the contractor a certificate reciting that he was entitled to $1,200, "as seventh payment as per terms of contract dated July 6, 1906, with 15 per cent. reserve." This certificate was assigned to the plaintiff for a valuable consideration. The plaintiff has presented said certificate to the defendants for payment, notifying them of the assignment, and payment has been refused.

Numerous grounds of demurrer were filed to this petition as finally amended, but the only contention raised by them which is really insisted upon in this court is that the contract with Wagener being an entire one, and the assignment to the plaintiff being of a part of a general fund, the city court of Tifton was without jurisdiction to entertain the suit, but the assignment, being an equitable one, could be enforced only in a court of equity, where all the parties were before the court and the interests of all could be fixed and determined in one decree.

1. It is not contended that the church lot and edifice could not be made subject to the debt due the contractor. Civil Code (1910), § 2834; *Josey* v. *Union Loan Co.,* 106 *Ga.* 608 (32 S. E. 628); *Kelsey* v. *Jackson,* 123 *Ga.* 113 (50 S. E. 951). Nor is it contended that the claim of Wagener against the trustees was not assignable. See Civil Code (1910), §§ 3653, 4274; *National Bank* v. *Leonard,* 91 *Ga.* 805 (18 S. E. 32). We will not discuss the question argued in the briefs, whether, under the Civil Code (1910), § 3786, the plaintiff's claim could be enforced in a court of law, against the trust estate represented by the defendants, even though it might not be enforceable against a debtor other than a trust estate. The rule is well settled that only a court of equity can enforce a partial assignment of a fund when the debtor has not assented to the assignment. This rule is founded upon the theory that where a debtor has contracted in one obligation to pay a sum of money, the cause of action which may arise against him by reason of his default in failing to make payment according to the terms and tenor of his obligation can not be split up and divided so as to annoy and harass him with more than one suit. *Central Ry. Co.* v. *Dover,* 1 *Ga. App.* 240 (57 S. E. 1002); *Rivers* v. *Wright,* 117 *Ga.* 81 (43 S. E. 499); *W. & A. R. Co.* v. *Union Investment Co.,* 128 *Ga.* 74 (57 S. E. 100); *King* v. *Central Ry. Co.,* 135 *Ga.* 225 (69 S. E. 113); *Southern Printing Co.* v. *Potter,* 136 *Ga.* 869 (72 S. E. 427). In *Central Ry. Co.* v. *Dover,* supra, the assignment was of "the sum of twenty dollars out of whatever money may now be due, or may become due" to the assignor as wages, on or before a specified date. It was held by this court that the assignment was not of a particular fund, and that only a court of equity would enforce it. An illustration of a legal assignment enforceable in a court of law is found in the case of *Central Ry. Co.* v. *King,* 137 *Ga.* 369 (73 S. E. 632). There the assignor transferred his "account for salary or wages already earned . . during the month of May, 1910, and amounting to $27.75, and due" him by the railway company. It was held that the legal title to the particular fund described in the assignment was transferred to the assignee, and that the instrument of transfer was not a partial assignment of a general fund belonging to the assignor in the hands of the railway company.

The present case, in our opinion, falls within the principle of

the decision last referred to, and is not controlled by the decisions first cited, dealing with equitable assignments. It will be observed that the contract in the present case stipulated that the agreed price should become due in instalments; each instalment to be paid on the first day of each month, upon a certificate by the architects that the sum claimed was due and payable to the contractor. When such a certificate was issued the church authorities became indebted to the contractor for the particular amount specified in the certificate, unless they had a right, under other provisions of the contract, to retain all or a part of this sum to protect themselves against liens or claims for labor or material which had not been paid for by the contractor.

It is immaterial whether we treat the contract as an entire or a divisible one (*Hunnicutt* v. *Van Hoose,* 111 *Ga.* 518, 36 S. E. 669; *Spalding County* v. *Chamberlin,* 130 *Ga.* 649, 61 S. E. 533); for "if the breaches occur at successive periods in an entire contract (as where money is to be paid by instalments), an action will lie for each breach." Civil Code (1910), § 4389. The particular fund described in the certificate of the architects became prima facie due upon the issuance and presentation of the certificate. It is immaterial that this fund was to be paid out of the general building fund in the hands of the church authorities, because theoretically the amounts of the instalments specified in the certificates of the architects from time to time were to be segregated from the general fund, and a separate and independent indebtedness arose for the amount of each instalment. The situation is substantially the same as if one should give to another a promissory note for $10,000, payable in monthly instalments of $1,000, becoming due at different times. In such a case it could not be denied that a separate action might be brought, either by the original creditor or by his transferee, to recover each instalment as it became due. Of course, under the terms of the code section, the suit would have to embrace all indebtedness due and payable at the time the suit was instituted; but this provision of the statute is not applicable to the present case. The case is controlled in principle by the decision of the Supreme Court in the *King* case, cited above. In that case it was immaterial that the railway company may have employed the debtor for a year or more, or may have been under a contract with him to pay him

a certain sum per year as wages; if the wages were to be paid in monthly instalments, then manifestly the employee or his assignee would have had a right to sue, to recover each month's wages as they fell due.

2. Another point stressed in the argument is that the petition is defective because it fails to allege that the contractor was not indebted for labor and material, and had discharged all claims which might become liens on the property. The contract gave the owners the right to retain an amount sufficient to protect them against any lien or claim for which they were or might become liable. If any such liens or claims exist, this would be matter of defense. Under the contract a prima facie right to recover is shown by proof of a certificate of indebtedness, issued by the architects in accordance with the stipulations of the contract. When this is done the case stands as any other suit upon any other evidence of indebtedness setting forth a liquidated demand. Matters properly the subject-matter of a plea of confession and avoidance are affirmative defenses, the existence of which need not be negatived by the plaintiff.          *Judgment affirmed.*