### 11887

#### CARWILE, RECEIVER v. METROPOLITAN LIFE INS. CO.

##### (134 S. E., 285)

1. ASSIGNMENTS—ASSIGNMENT OF PORTION OF MORTGAGE BY INSURANCE COMPANY TO FINANCIAL CORRESPONDENT HELD NOT EQUITABLE ASSIGNMENT AND TO GIVE CORRESPONDENT RIGHT ONLY TO REQUIRE ACCOUNTING.—Where, as authorized by contract with its financial correspondent, insurance company required the correspondent to repurchase portion of loan, assignment of such portion, under which insurance company retained bond and mortgage with exclusive right to enforce collection, *held* not an equitable assignment, and to give correspondent right only to require accounting for its equitable interest.

2. ASSIGNMENTS.—Assignment in whole or in part of chose in action, with reservation of rights of collection, is not an equitable assignment.

3. PRINCIPAL AND AGENT.—Insurance company, in allowing financial correspondent, who had procured real estate loans for it, to purchase portion of loan, had right to reserve right to collect entire debt and limit its liability to correspondent to duty to account.

4. Assignments.—Assignee under equitable assignment may enforce his rights only in Court of Equity.

5. Receivers—Right of Insurance Company to Collect Full Amount on Notes, Including Portion Assigned to Financial Correspondent, Was Not Affected by Appointment of Receiver for Correspondent.—Where insurance company had right to make collection of full amount due on notes and mortgages, including portion purchased by and assigned to its financial correspondent who had negotiated loans, such right was not destroyed by appointment of receiver for financial correspondent.

6. Receivers.—Receivers can acquire no other, greater, or better interest than debtor had in property.

7. Receivers.—Receiver of bond company, acting as financial correspondent of insurance company in procuring real estate loans, succeeded only to rights that bond company had by reason of its repurchase of portion of a loan.

8. Receivers—Insurance Company Collecting Entire Amount Due on Notes, Including Portion Repurchased by Financial Correspondent, Had Right, as Against Correspondent's Receiver, to Set Off Its Claim Against Correspondent For Collections Made in That Capacity.—Where financial correspondent of insurance company, in procuring loans, repurchased portion of loan under agreement that insurance company would hold notes, insurance company, on payment of entire loan to it after appointment of receiver for correspondent, had right to set off its claims against correspondent for moneys collected by correspondent.

9. Set-Off and Counterclaim.—In Equity, set-off does not have to meet requirements for counterclaim under Code.

10. Set-Off and Counterclaim.—Absence of strict mutuality does not prevent allowance of equitable set-off where justice demands it.

11. Set-Off and Counterclaim.—Insolvency of party against whom set-off is claimed is sufficient ground for equitable interference.

12. Receivers.—Allowance of valid set-off against insolvent company in receiver's hands *held* not to work preference in derogation of rights of general creditors.

Before Whaley, J., Richland, June, 1924.   Reversed.

Action by R. E. Carwile, as Receiver of the Carolina Bond & Mortgage Company, against the Metropolitan Life Insurance Company. Judgment for plaintiff, and defendant appeals.

The assignment mentioned in the opinion was as follows:

"The Metropolitan Life Insurance Company hereby ac-

knowledges receipt from Carolina Bond & Mortgage Company of Columbia, S. C., of the sum of two thousand ($2,-000.00) dollars, the terms and conditions of which payment and receipt are as follows:

"First. Such payment is made by said Carolina Bond & Mortgage Company as a purchase by it of an interest in the amount thereof in certain principal notes aggregating five thousand five hundred ($5,500.00) dollars (and proportionally in certain interest notes accompanying the same), which principal notes were executed by one John K. Goodyear, payable to the order of Carolina Bond & Mortgage Company, the due payment of which principal and interest notes is secured by a certain mortgage or trust deed made and executed by John K. Goodyear of Nichols, S. C., of even date with said notes which instrument was recorded in the office of register of deeds of the County of Marion, State of South Carolina, on the 10th day of February, 1920, in Book 52 of mortgages at page 378, which said notes and accompanying mortgage were subsequently assigned to said Metropolitan Life Insurance Company, and said company is now the owner and holder thereof.

"Second. The interest in said notes so purchased by said Carolina Bond & Mortgage Company is an interest junior, inferior, and subordinate in every respect to the balance of said principal notes retained by said Metropolitan Life Insurance Company (and, proportionally, with respect to said interest notes), which balance, so retained, has priority in all payments of principal and interest, and in the proceeds (after the payment of all proper costs and disbursements) of any proceedings to enforce payment, by foreclosure or otherwise, the said Carolina Bond & Mortgage Company obtaining under such purchase no right whatsoever to enforce payment of the amount of its said purchase, save and excepting a right to a proper accounting from said Metropolitan Life Insurance Company of the said sum of two thousand ($2,000.00) dollars and of its proportional share

of all periodical interest payments received under said interest notes, to which accounting they are entitled, however, only after the prior payment in full of all principal and interest notes held by Metropolitan Life Insurance Company and of all Metropolitan Life Insurance Company's said costs and disbursements.

"Executed and delivered at the City of New York, N. Y., this 26th day of July, 1920.

"Metropolitan Life Insurance Company,

"By F. H. Allen, Vice President."

*Messrs. Elliott & McLain, Nelson & Mullins, Leroy A. Lincoln* and *H. C. Bates,* for appellant, cite: *Legal and conventional subrogation:* 48 A., 333; 104 S. E., 464; 252 F., 324; 262 S. W., 225. *When equitable assignment complete:* 14 Wall., 69; 20 L. Ed., 762; 5 C. J., 912. *Equitable title will not support action in trover for conversion:* 163 Mass., 522; 40 N. E., 863; 96 So., 573; 10 N. Y. S., 272. *No conversion on part of president of plaintiff corporation:* 78 S. C., 157; 59 S. E., 856. *Suit by receiver on claim not matured at time of his appointment subject to set-off of debt due defendant by receiver's predecessor at time of his appointment:* 45 A., 23; 206 N. Y., 40; 23 N. J. L., 283; 135 S. W., 902; 19 S. E., 371; 2 A., 30; 146 U. S., 419; 36 L. Ed., 1059. *Set-off is remedial and should be applied liberally:* 124 S. C., 380; 117 S. E., 415; 108 S. C., 66; 93 S. E., 422; 69 S. C., 227; 48 S. E., 61. *Receiver stands in shoes of insolvent as regards set-off against his claims:* 39 S. C., 86; 146 U. S., 499; 36 L. Ed., 1059; 136 U. S., 223; 34 L. Ed., 341; 57 Minn., 87; 47 A. S. R., 576; 141 P., 1181; 23 N. J. L., 283; 45 N. W., 223; 136 N. Y., 163; 32 N. E., 706; 118 Ga., 345; 45 S. E., 404; 45 A., 23; 239 S. W., 105; 136 App. D. W., 495; 103 N. Y. S., 153; 118 App. D. W., 591; 72 A., 485. *Defendant entitled to his equitable defense:* 45 S. C., 111; 14 S. C., 118. *In equity set-off need not meet requirements of statutory counterclaim:* Bailey, Eq., 156; 152 U. S., 596; 14 Sup.

Ct., 710; 38 L. Ed., 565; 95 S. W., 337. *Absence of strict mutuality will not prevent equitable set-off:* 39 S. C., 86; Bailey, Eq., 156; 146 U. S., 499; 36 L. Ed., 1059; 36 N. E., 797; 136 N. Y., 163. *Set-off allowed in cases similar to one at bar:* 155 N. Y., 401; 50 N. E., 49; 95 S. W., 337; 57 A., 1094; 55 N. W., 413.

*Messrs. Melton & Belser,* for respondent, cite: *Form of assignment of chose in action not essential:* 95 S. C., 16; 20 S. C., 123; 2 R. C. L., 614; 2 A. & E. Enc., 1055, 1059, 1069 and 1071; 1 Pomeroy, Eq., Sec. 169. *Chose in action at bar held in trust for creditors of insolvent:* 125 S. C., 332; 125 S. C., 214; 30 S. C., 192; 9 S. C., 318. *When receiver's title vests:* 81 F., 439; 80 F., 441; 73 F., 709; 56 F., 539; 23 A. & E. Enc., 1095. *Debts due from individual members to insolvent partnership are assets in hands of receiver:* 35 Ct. Cl., 311; 23 A. & E. Enc., 1049. *Receivership may include equitable assets:* 23 A. & E. Enc., 1048. *No priorities obtainable after appointment of receiver:* 18 S. C., 87; 55 F., 885; 23 A. &. E. Enc., 1043. *Court protects receiver against interference:* 125 S. C., 214; 30 S. C., 192; 95 S. C., 318; 149 U. S., 164; 13 S. Ct., 785; 37 L. Ed., 689; 23 R. C. L., 64; 34 Cyc., 199. *Duty of receiver to collect assets:* 4 Wall., 262; 18 L. Ed., 330; 23 R. C. L., 71. *Defendant had no lien over proceeds of debt due plaintiff:* 25 S. C., 116; 1 Rich., 323; 1 A. & E. Enc., 1086 and 1094. *Authority to collect assets of principal revoked by insolvency of principal; liability to account for money subsequently collected:* 25 S. C., 116; 1 Rich., 23; 3 Pomeroy, Eq., 1058; 1 A. & E. Enc., 1086, 1088, 1094 and 1227; 10 R. C. L., 694. *Trust property acquired by a volunteer or purchaser with notice:* 106 S. C., 386; 91 S. E., 296; 152 F., 763; 3 Pomeroy, Eq. Jur., Sec. 1048. *Relation of mutual debtor and creditor between plaintiff and defendant lacking:* 23 R. C. L., 57; 23 L. R. A., 13, note; Alderson on Receivers, 779. *Mutuality of demands essential to set-off:* 55 S. C., 528; 30 S. C., 126; 9 Rich.,

11—S. C.—136.

Eq., 369; 3 McC., 249; 15 Am. Dec., 631; 2 McC., 185; 1 Strob., Eq., 275; 2 Mill., 213; 25 A. & E. Enc., 576; 34 Cyc., 198. *Attempt by defendant to procure preference in assets of insolvent was misappropriation:* 124 S. C., 380; 25 S. C., 116; 1 Rich., 441; 1 A. & E. Enc., 1086 and 1094; 3 Pomeroy, Eq., 1037, 1051 and 1058. *"Debt" defined:* 3 McC., 249; 138 Ill., 272; 27 N. E., 905; 32 A. S. R., 140; 3 Utah, 277; 3 P., 546; 61 Md., 122; 50 Md., 302; 1 Minor, 119; 94 Mich., 489; 54 N. W., 173; 34 Iowa, 208; 127 Mo., 622; 30 S. W., 190; 27 L. R. A., 769; 48 A. S. R., 653; 1 Mass., 481; 2 Words & Phrases, 1864. *Collection of loan by defendant created trust for plaintiff: no relation of debtor:* 78 S. C., 157; 53 S. C., 583; 2 N. & McC., 286; 1 Bay, 398; 2 A. & E. Enc., 1091; 25 A. & E. Enc., 533; 3 Pomeroy, Eq., 1047 and 1058. *Rights of parties determined at time of appointment of receiver:* 124 S. C., 380; 30 S. C., 126; 3 McC., 249; 75 Pa. St., 112; 7 Cal., 543; 50 Ind., 327; 27 Ind., 158; 26 Misc., 385; 8 Misc., 84; 3 Keyes (N. Y.), 13; 6 Barb. (N. Y.), 380; 2 Hill (N. Y.), 210; 20 Johns (N. Y.), 137; 4 Johns, Ch. (N. Y.), 13; 8 Wend. (N. Y.), 530; 59 N. Y., 574; 17 Am. Rep., 384; 23 A. & E. Enc., 607 and 1094. *Demands against which set-off allowed:* 91 F., 352; Minor (Ala.), 176; 12 Ark., 378; 1 Ga., 511; 44 Am. Dec., 677; 11 Ill., 338; 27 Ind., 158; 11 Iowa, 81; Hard (Ky.), 260; 2 N. H., 419; 8 Wend. (N. Y.), 530; 10 S. & R. R. (Pa.), 10; 27 Vt., 249; 1 Wash. (Va.), 221. *Debts and demands in individual and representative capacities:* 78 S. C., 157; 50 S. C., 583; 30 S. C., 192; 9 S. C., 318; 84 N. Y., 145; 38 N. Y. S., 1020; 23 L. R. A., 323; 34 Cyc., 720. *Money received equitably belonging to another deemed held in trust:* 106 S. C., 386; 53 S. C., 583; 18 S. C., 289; 152 F., 763; 3 Pomeroy, Secs. 1047 and 1058. *Cases distinguished:* 155 N. Y., 401; 50 N. E., 49; 146 U. S., 499. *Allowance of set-off inequitable:* 124 S. C., 380; 1 Pomeroy, Eq., Sec. 410. *Cases cited generally to sustain re-*

*spondent's contentions:* 124 S. C., 386; 55 S. C., 582; 53 S. C., 583; 30 S. C., 352; 30 S. C., 126; 3 McC., 153; 2 McC., 185; 1 McC., 7; Cheves, 50; 149 F., 127; 91 F., 352; 54 L. Ed., 115; 86 Hun. (N. Y.), 271; Ann. Cas., 1916-D, 559; 2 N. H., 479; 58 Mich., 124; 55 Am. Rep., 660; 23 R. C. L., 57; 24 R. C. L., 792; 23 L. R. A., 313; 34 Cyc., 198 and 712; 23 A. & E. Enc., 1094; 25 A. & E. Enc., 535, 576 and 607.

July 27, 1926.

*Per Curiam.* It is ordered that the opinion heretofore filed in this case be withdrawn, and that the following be substituted therefor as the opinion of this Court, that the order staying the remittitur be revoked, and that the same be immediately filed with the lower Court:

This is an action for the recovery of $2,000.00, with interest at 6 per cent. per annum from February 5, 1920, to November 1, 1923, and on that amount interest at 7 per cent. per annum from November 1, 1923, and for the sum of $500.00 as punitive damages, alleged to be due to the plaintiff as receiver of the Carolina Bond & Mortgage Company (hereinafter referred to as the bond company), by reason of the conversion by the defendant (hereinafter referred to as the insurance company), of certain money belonging to said receiver officially.

The facts are quite complicated and a solution of the questions of law involved requires a detailed statement of them, as follows:

Beginning in October, 1918, and continuing until November, 1922, a written contract was in force between the bond company and the insurance company, under which the bond company acted as "financial correspondent" of the insurance company in the states of North Carolina and South Carolina. The bond company, with headquarters at Columbia, S. C., was extensively engaged in making loans upon bonds secured by real estate mortgages. The

contract with the insurance company enabled it to obtain large sums of money from that company in conducting that business, and it provided in detail the manner in which the contemplated transactions were to be conducted. In brief, the bonds and mortgages were to be taken in the name of the bond company, assigned and forwarded to the insurance company with formal applications, abstracts of titles, opinions, leases, etc. Upon approval of the loan, the insurance company was to deposit the amount of the loan to the credit of the bond company in a New York bank, with which resources the loan was consummated. Thereafter payments of installments of principal and interest were to be made by the mortgagors to the bond company, and by it remitted to the insurance company; the bond company being charged with the duty of collection and remittance.

The contract provided on the part of the insurance company:

"It further agrees that, if the said correspondent shall pay the interest or any part thereof, or of the principal of any mortgage to the said company, before collecting the same from the borrower, it shall advise the company when making payment that the same has been advanced by it, and any and all right, title, and interest in which the correspondent may have in and to said bond or note and mortgage or deed of trust, or in the proceeds thereof, by subrogation or otherwise, shall be subordinate in all respects to the interest therein of the company."

Under this contract the insurance company reserved the right to require the bond company to repurchase any of the loans, if at any time within one year the insurance company should consider such loan not satisfactory or otherwise not desirable.

In pursuance of this arrangement, the bond company in February, 1920, made a loan of $5,500 to John K. Goodyear of Nichols, S. C., the loan being evidenced by notes payable to the order of the Carolina Bond & Mortgage Company,

installments from 1922 to 1925, and secured by mortgage of land in Marion County, S. C. This loan with the security was promptly assigned by the bond company to the insurance company. The insurance company, however, as authorized by its contract, required the bond company to repurchase an interest to the extent of $2,000.00 in this loan, which was accordingly done in July, 1920; and the insurance company at the same time delivered to the bond company a written assignment of an interest in the loan to the extent of the $2,000.00 paid, as provided in the assignment. Let the assignment be reported.

On November 14, 1922, the president of the bond company died; on the 23d, the insurance company gave formal notice of the termination of the contract of October, 1918; on the 27th, the plaintiff was appointed receiver of the bond company.

On November 1, 1923, the attorneys for the insurance company collected the full amount of the Goodyear loan, including interest and attorney's fees. The collection included the amount of the partial assignment held by the bond company, $2,000.00, with interest at 6 per cent. from the date of the mortgage, and was effected by assigning the notes and mortgage to the Bank of Nichols, the attorneys receiving therefor the sum of $7,006.50.

The receiver of the bond company thereafter made demand upon the insurance company for the part of this amount due to the bond company, and, upon refusal, this action was instituted in March, 1924.

At the time of the appointment of the receiver, the bond company was indebted to the insurance company in the sum of $16,488.12, on account of installments of principal and interest collected by it upon bonds and mortgages which had been assigned to the insurance company, the bulk of which had been collected in October and November, 1922.

The defense of the insurance company was that it had

the right to set off its claim of $16,488.12 against the demand of the receiver.

The case was tried by his Honor, Judge Whaley, County Judge, without a jury, by consent. He filed a decree refusing to allow the set-off claimed by the defendant, and rendering judgment in favor of the receiver for the proportionate share of the $7,006.50 collection by the insurance company, to which the bond company was held entitled, $2,547.82, with interest from the date of the collection, November 1, 1923, to July 1, 1924, at 7 per cent. per annum, making a total of $2,666.72. From this judgment the insurance company has appealed.

It appears that the insurance company has in its hands about $40,000.00 of these advance payments made by the bond company, including that involved herein, and whether it shall be allowed to set off against this liability the amount due by the bond company to it, $16,488.12 is a matter of serious consequence to it, determinable by the result of this litigation. If it be not allowed to do so, the insurance company will be required to pay this $40,000.00 to the receiver and receive a dividend, estimated at 10 to 15 per cent. upon the amount concededly due by the bond company to it; a result which appears unjust and not to be tolerated unless irresistibly compelled by the principles of the law.

The availability of the defendant's asserted claim of set-off is determined by the character and extent of the interest or right which the bond company acquired in the Goodyear notes and mortgage by reason of its advance payment of $2,000.00 on July 26, 1920.

Under the original contract of October, 1918, it was entirely optional with the bond company whether it would make any advance payment; if it did so, the contract provided that whatever right it might acquire by such advance payment should be subordinate in all respects to the interest of the insurance company.

The assignment of July 26, 1920, from the insurance company to the bond company followed closely the provisions of the original contract, as will appear from the terms of the assignment, a copy of which will be incorporated in the report of the case. It amounted to the partial assignment of a chose in action.

Under the ordinary circumstances the transaction would have constituted an equitable assignment of so much of the bond and mortgage as was equal to the advance payment. But, under the peculiar circumstances of this transaction, the essential elements of an equitable assignment are lacking.

The bond and mortgage remained in the possession of the insurance company; the title to them was in that company; the right, the exclusive right, to enforce collection was in that company; Goodyear could not have paid the bond company its part of the debt and secured an acquittance, nor could he have been compelled at the suit of the bond company to have paid such part to it. Therefore, the payment did not constitute an equitable assignment, and the only right which the bond company acquired was to compel an accounting by the insurance company, as the trustee of an express trust, for its conduct in reference to the subject of the trust. In other words, the insurance company occupied the position of a trustee, to hold the entire debt, to use proper diligence in collecting it, and to account to the bond company for its equitable interest.

That the insurance company reserved the right to the custody of the securities and the right to collect the entire amount of the mortgage debt does not admit of a doubt. The terms of the written assignment conclusively demonstrate this:

"The said Carolina Bond & Mortgage Company obtaining under such purchase no right whatsoever to enforce payment of the amount of its said purchase, save and excepting a right to a proper accounting from said Metro-

politan Life Insurance Company of the said sum of $2,-000.00, and of its proportional share of all periodical interest payments received under said interest notes."

It has been uniformly held that, where the holder 2. of a chose in action assigns it in whole or in part and reserves the right to collect the chose in action, whatever the transaction may be, it is not an equitable assignment.

In 5 C. J., 912, it is said:

"The assignor of a chose in action must part with the power of control over the thing assigned; if he retains control, it is fatal to the claim of the assignee."

Referring to equitable assignments, it is said in *Christmas v. Russell,* 14 Wall., 69; 20 L. Ed., 762:

"The assignor must not retain any control over the fund; any authority to collect, or any power of revocation. If he do, it is fatal to the claim of the assignee."

"An assignor of a chose-in action must part with the power of control over the chose assigned, and the assignment must be so delivered as to be irrevocable." *Coffman v. Liggett,* 107 Va., 418; 59 S. E., 392.

"Where the supposed assignor retains the subject under his own control by delivering the order, not to the assignee but to his own agent, the transaction is not allowed to have the effect of an equitable assignment." 2 Am. & Eng. Enc. L., 1061.

In the case of *In re: Wood,* 243 Pa., 211; 89 A., 975, it was held that an agreement under which the alleged assignor retains any control over the fund, authority to collect, or power of revocation, does not constitute an equitable assignment of a fund in the hands of executors.

Another reason why the transaction in question did not amount to an equitable assignment is that the fund holder, Goodyear, could not have safely paid the amount of his debt represented by the advanced payment, to the bond

company, and could not have been compelled by the bond company to do so.

The insurance company, in allowing the bond company, for its own purposes, to make the advance payment, certainly had the right to stipulate that its right to collect the entire debt be reserved; that the bond company should not acquire a lien upon the bond or mortgage or upon the proceeds of collection; that its liability to the bond company should simply be the duty of accounting to it for the equitable interest acquired, doubtless to meet the very situation that has been presented, to secure the right of set-off. If, therefore, the insurance company retained the exclusive right of collection, the bond company did not have it. Not having it, the bond company could not have compelled Goodyear to pay its part of the debt, and he would not have been safe in doing so.

In *Christmas v. Russell*, 14 Wall., 69; 20 L. Ed., 762, *supra*, it is said:

"The transfer must be of such a character that the fund holder can safely pay, and is compellable to do so, though forbidden by the assignor."

"But a mere promise or agreement to pay a debt out of a designated fund, when received, does not give an equitable lien upon the fund, or operate as an equitable assignment of it. Something more is necessary. To constitute an equitable assignment, there must be an assignment or transfer of the fund, or some definite portion of it, so that the person owing the debt or holding the fund on which the order is drawn can safely pay the order, and is compellable to do so, though forbidden by the drawer." *Hicks v. Roanoke Co.*, 94 Va., 741; 27 S. E., 596.

"It is well settled that an order to pay a debt out of a particular fund belonging to the debtor gives to the creditor a specific equitable lien upon the fund, and binds it in the hands of the drawee. * * * But a mere agreement

to pay out of such fund is not sufficient. Something more is necessary. There must be an appropriation of the fund *pro tanto,* either by giving an order or by transferring it otherwise in such a manner that the holder is authorized to pay the amount directly to the creditor without the further intervention of the debtor." *Trist v. Child,* 21 Wall., 441; 22 L. Ed., 623.

Under these authorities the assignee of the entire chose in action is not the holder of an equitable assignment if the assignor reserve the right of collecting it. *A fortiori* is the assignee of a part of the chose in action under a greater disability.

"An assignment of a portion of a debt, assigned without the consent or ratification of the debtor, cannot be recovered on the portion so assigned, and this principle is of force in equity as well as at law." *Burnett v. Crandall,* 63 Mo., 410.

"An assignment of a portion of a debt does not vest the assignee with a greater right than the assignor himself had, and, as the assignor could not himself institute an action to recover part of the amount, his assignee cannot." *Weinstock v. Bellwood,* 12 Bush (Ky.), 139.

"A partial assignment of one's interest in a fund in the hands of another is not binding on the latter, unless accepted by him; and he may deal with the assignors as if no assignment had been made, in the absence of the institution of a suit to which all persons interested are parties." *Shearer v. Shearer,* 137 Ga., 51; 72 S. E., 428.

"As between an assignee and a debtor, a partial assignment. cannot be enforced." *Burditt v. Porter,* 63 Vt., 296; 21 A., 955; 25 Am. St. Rep., 763.

"A partial assignment of a debt so as to authorize the assignee to recover thereon cannot be made without the consent or ratification of the debtor." *Hughes v. Kiddell,* 2 Bay (S. C.), 324.

But assume that, notwithstanding these difficulties, the assignment of a part of the chose in action may constitute an equitable assignment, assignee's right, being equitable, is enforceable only in a Court of Equity.

"While a single debt may be partially assigned to one or more assignees, such assignees can sue only in a Court of Equity, which can adjudge the rights of all parties in one action." *Carvill v. Mirror Films,* 178 App. Div., 644; 165 N. Y. S., 676.

In 5 C. J., 894, it is said:

"At law, a partial assignment of a chose in action is not recognized unless made with the consent or ratification of the debtor. Courts of Equity, however, have always recognized partial assignments of choses in action for many purposes, and will protect the assignees under such partial assignments whenever they can do so without working a hardship upon the debtor."

The reason of the rule is that a creditor is not permitted to split up a single cause of action into many actions, without the consent of his debtor, and thus subject him to annoyance and embarrassment not contemplated by his original contract. In *Fourth St. Nat. Bank v. Yardley,* 165 U. S., 634; 17 S. Ct., 439; 41 L. Ed., 855, the Court said:

"The owner of a chose in action or of property in the custody of another may assign a part of such rights, and that an assignment of this nature, if made, will be enforced in equity, is also settled doctrine of this Court."

In *James v. Newton,* 142 Mass., 368; 8 N. E., 122; Am. Rep., 692, cited in the *Yardley case,* it is held that in equity there may be, without the consent of the debtor, an effectual assignment of part of an entire debt.

"The rule is well settled that only a Court of Equity can enforce a partial assignment of a fund when the debtor has not assented to the assignment." *Timmons v. Bank,* 11 Ga. App., 69; 74 S. E., 798.

"But the settled rule of the national Courts, and the general and rational.rule is that the assignee of a part. of a credit or of a chose in action or of property in the custody of another may enforce his claim by a suit in equity, for the very reasons that he cannot do so, and hence has no adequate remedy, at law, and that he may make the assignor and all the assignees parties to the suit, so that the debtor will be subject to but a single action"—citing *Rogers v. Penobscot Co.,* 83 C. C. A., 380; 154 F., 606.

There cannot be a doubt, therefore, as to the proposition that the only right acquired by the bond company, on account of its advance payment, was to compel an accounting by the insurance company of its equitable interest; it is specifically so declared in the assignment.

But in this particular case, concerned as we are with the availibility of the asserted claim of set-off, it makes very little difference whether the payment created an equitable assignment, an equitable right to an accounting, or an equitable right in the bond company as the assignee of a part of a chose in action, for, in any event, under any construction of the effect of the transaction, the bond company must have asserted its right in a Court of Equity. If so, the bond company did not acquire the legal title to a chose in action or to any part of it, and the acquisition of the receiver is limited to that of the bond company. If the receiver did not acquire the legal title to a chose in action, in whole or in part, he succeeded only to the equitable rights of the bond company.

In *Carroll v. Cash Mills,* 125 S. C., 332; 118 S. E., 290, it is declared:

"It hardly needs authority · for the proposition that the receiver is in no sense a subsequent purchaser or creditor, but stands in the shoes of the debtor, with no greater title or interest than he possessed"—citing cases *In re: American Slicing Machine Co.,* 125 S. C., 214; 118 S. E., 303.

Whether the collection of the entire Goodyear debt was

made before or after the appointment of the receiver, the insurance company would have done no more than it had the right to do under its contract with the bonding company.

As the title to the securities was in the insurance 5, 6 company, and the right to collect the whole amount due, regardless of the advance payment, was vested by agreement and express reservation in the insurance company, there could arise no controversy as to the right of the insurance company, to make that collection before the appointment of the receiver. It was a right which continued certainly up to the moment of the receiver's appointment, a right which the bond company was compelled to recognize. Was this right destroyed by the appointment of a receiver? As quoted from 34 Cyc., 191, in the case of *In re: American Company,* 125 S. C., 214; 118 S. E., 303:

"A receiver can acquire no other, greater, or better interest than the debtor had in the property."

In *Carroll v. Cash Mills,* 125 S. C., 332; 118 S. E., 290, it is declared:

"The appointment of a receiver works no metamorphosis in the title or interest to or in the assets of the insolvent; that the receiver takes possession of them as the arm of the Court, subject to all existing liens and incumbrances, to be administered under the direction of the Court, having due regard to the legal and equitable rights of the parties and those stockholders and creditors represented by the receiver."

"A receiver holds the property coming into his hands by the same right and title as the person for whose property he is receiver, subject to liens, priorities, and equities existing at the time of his appointment. He becomes merely the assignee of the insolvent and has exactly the same rights." 23 R. C. L., 56, citing cases.

"The receiver took the assets of the Fidelity Bank as a

mere trustee for creditors, and not for value and without notice, and, in the absence of statute to the contrary, subject to all claims and defenses that might have been interposed as against the insolvent corporation.  *  *  *  " *Scott v. Armstrong,* 146 U. S., 499; 13 S. Ct., 148; 36 L. Ed., 1059.

The receiver makes no claim that he has created a new right against the insurance company, or that a new right has inured to him since his appointment.  He has done nothing and the insurance company has done nothing which by any possibility could be construed into the creation of a new cause of action in favor of the receiver.  All that has been done is the collection of the entire debt from Goodyear, including the advance payment, a right secured to the insurance company by contract with the bond company, and which the receiver, standing in the shoes of the bond company, could not deprive it of.  Consequently the right upon which receiver sues, the right to require an accounting, is a right which was vested in the bond company, and which succeeded to him as receiver.  It follows, therefore, that, if the insurance company had the right, before the appointment of a receiver, to collect the entire Goodyear debt, subject of course to an accountability to the bond company, that right was not affected by the appointment, and that the receiver succeeded only to the rights which the bond company may have asserted and subject to all defenses against it.

Now the question arises whether the insurance company, in the event of the collection before receivership, in an action by the bond company for an accounting, could have set off the debt which it owed the bond company.  If so, it has the same right as against the receiver after his appointment.  Upon this proposition we do not think that there can be room for controversy even.  The bond company was under a contract duty to

collect the installments of principal and interest as they fell due, and to remit them to the insurance company. This clearly established a trust relation between them, and the moment a collection was made the bond company became a trustee for the insurance company. In like manner the insurance company was under a contract · duty to collect the entire mortgage debts and to account to the bond company for its interest in them. This clearly established a trust relation between them, and the moment a collection was made the insurance company became a trustee for the bond company. Both of these relations spring from the same contract, and present a perfect illustration of the right of a recoupment in equity, which entitles the one party to set off against the claim of the other that which such other owes to him.

"The doctrine of recoupment rests upon the principle that it is just and equitable to settle in one action, thus avoiding a multiplicity of suits, all claims growing out of the same contract or transaction." 3 Story, Eq. Jur. (14th Ed.), § 1878.

This doctrine grows out of the inherent power of a Court of Equity to do justice between the parties and in avoidance of a multiplicity of suits. It operates only by way of abatement of the claim against which it is opposed, and does not entitle the party asserting it to a judgment for any difference as a counterclaim. 34 Cyc., 623.

Even if there were a question of mutuality of the demands, it is well recognized that in equity a set-off does not have to meet the requirements for a counterclaim under the Code. *Falconer v. Powe*, Bailey, Eq., 156. *North Chicago Rolling Mill v. St. Louis Steel Co.*, 152 U. S., 596; 14 S. Ct., 710; 38 L. Ed., 565. *Smith v. Perry*, 197 Mo., 438; 95 S. W., 337.

In *North Chicago Rolling Mill v. St. Louis Steel Co.*, *supra,* it is said: But the defendant's claim, while not good in law, may still be entitled to recognition as an off-set in

equity, "cross-demands and counterclaims, whether aris-
ing out of the same or wholly disconnected transactions,
and whether liquidated or unliquidated, may be enforced
by way of a set-off whenever the circumstances are such
as to warrant the interference of equity to prevent wrong
and injustice."

In *Smith v. Perry, supra,* the Court says:

"But it does not necessarily follow that, because de-
fendants' claims could not be pleaded as set-offs under the
statute, they cannot be pleaded as set-offs in a proceeding
in equity, the right to do so depending upon the circum-
stances among which is the insolvency of the party against
whom the set-off is claimed; this being a distinct ground
for entertaining it.    *    *    *"

The Courts have uniformly applied the principle
of equitable set-off with great liberality to prevent
injustice even in cases where elements requisite to
legal set-off have been lacking. The facts indicating the
injustice of denying the insurance company a set-off in the
present case have been sufficiently presented. The facts
warrant the allowance of a set-off even if it should be con-
ceded, as it is not, that there was no strict mutuality of de-
mands. The Courts have repeatedly held that the absence
of strict mutuality does not prevent the allowance of an
equitable set-off, where justice demands it. *Falconer v.
Powe,* Bailey, Eq., 156. *Edwards v. Williams,* 39 S. C.,
86; 17 S. E., 457. *Scott v. Armstrong,* 146 U. S., 499;
13 S. Ct., 148; 36 L. Ed., 1059. *Merrill v. Cape Ann
Granite Co.,* 161 Mass., 212; 36 N. E., 797; 23 L. R. A.,
313. *Hughitt v. Hayes,* 136 N. Y., 163; 32 N. E., 706.

In addition to the plain equity of the insurance com-
pany, under ordinary circumstances, to set off its
claim against the claim of the receiver, in consider-
ing the relative equities, the very fact of insolvency of a
creditor against whom a set-off is claimed creates an equity
permitting the set-off. As said by the Supreme Court of

the United States in *North Chicago R. M. Co. v. St. Louis O. & S. Co.,* 152 U. S., 596; 14 Ct., 710; 38 L. Ed., 565:

"By the decided weight of authority it is settled that the insolvency of the party against whom the set-off is claimed is sufficient ground for equitable interference"— citing case.

See, also, *Edwards v. Williams,* 39 S. C., 86; 17 S. E., 457. *Scott v. Armstrong,* 146 U. S., 499; 13 S. Ct., 148; 36 L. Ed., 1059. *Colton v. Drover Perpetual Building and Loan Association,* 90 Md., 85; 45 A., 23; 46 L. R. A., 388; 78 Am. St. Rep., 431. *Hughitt v. Hayes,* 136 N. Y., 163; 32 N. E., 706. *State v. Allen,* 292 Mo., 360; 239 S. W., 105. *Wyckoff v. Williams,* 136 App. Div., 495; 121 N. Y. S., 189. *St. Paul Co. v. Leck,* 57 Minn., 87; 58 N. W., 826; 47 Am. St. Rep., 576.

In the *Scott case,* it is said:

"Courts of Equity frequently deviate from the strict rule of mutuality when the justice of the particular case requires it, and the ordinary rule is that, where the mutual obligations have grown out of the same transaction, insolvency on the one hand justifies the set-off of the debt due upon the other."

The suggestion that the allowance of the set-off will work a preference in favor of the insurance company in derogation of the rights of general creditors is fully answered by the Supreme Court of the United States in *Scott v. Armstrong,* 146 U. S., 499; 13 S. Ct., 148; 36 L. Ed., 1059:

"Where a set-off is otherwise valid, it is not perceived how its allowance can be considered a preference, and it is clear that it is only the balance, if any, after the set-off is deducted, which can justly be held to form part of the assets of the insolvent. The requirement as to ratable dividends is to make them from what belongs to the bank, and

that which at the time of the insolvency belongs of right to the debtor does not belong to the bank."

See *Union Bank v. Bank,* 136 U. S., 223; 10 S. Ct., 1013; 34 L. Ed., 341. *Trust Co. v. Leck,* 57 Minn., 87; 58 N. W., 826; 47 Am. St. Rep., 576. *People v. California Safe Deposit & Trust Co.,* 168 Cal., 241; 141 P., 1181; L. R. A., 1915-A, 299. *Van Wagoner v. Paterson Gaslight Co.,* 23 N. J. Law, 283. *McLaren v. Bank,* 76 Wis., 259; 45 N. W., 223.

The judgment of this Court is that the judgment of the County Court be reversed, and that the case be remanded to that Court for such proceedings as may be necessary to carry into effect the conclusions herein announced.

MR. JUSTICE COTHRAN and MESSRS. ACTING ASSOCIATE JUSTICES J. H. MARION and R. O. PURDY concur.

MR. JUSTICE WATTS: I think petition should be granted.